**In the Matter of Evelyn Dolores BELLGRAPH, Debtor.**

**Bankruptcy No. 80–20221.**

United States Bankruptcy Court, W. D. New York.

June 11, 1980.

Chemung County Neighborhood Legal Services, Inc. by William D. Gibney, Elmira, N. Y., for debtor.

George Reiber, Rochester, N. Y., trustee for debtor.

## MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

This matter came on for a Chapter 13 hearing on confirmation. The plan as proposed, provided no payment to unsecured creditors. At this point, the Court raised the question of the "good faith" requirement of Chapter 13 of the Bankruptcy Code. Briefs have been filed by the attorneys for the Chapter 13 debtor and a hearing has been held.

· The facts of this matter are as follows. The debtor, a 56 year old mother of seven children, owns a home at 516 Luce Street in the City of Elmira, New York and has resided there for 34 years. The home has an assessed value of $17,500 and in that particular community assessments approximate the value of the house. Mrs. Bellgraph has one minor child living at home. The child is seventeen. Mrs. Bellgraph was divorced in 1970 and receives $50.00 per month for support of her daughter from her ex-husband. Her other income comes from Social Security Disability, SSI, and Public Assistance and ·amounts to $390.74 per month. She is totally disabled under the Social Security definition and is currently receiving treatment for emphysema, a back problem and a nervous condition.

She has had a great deal of problems in recent years in managing her money. In late November, 1979, a tax foreclosure proceeding was brought against her for back taxes owed to the City of Elmira. On February 28, 1980, a Chapter 13 plan was filed in the Western District of New York on behalf of Mrs. Bellgraph by Chemung County Neighborhood Legal Services, Inc. No charges were assessed for legal fees. The plan proposed offers a 100% payment to a class of secured creditors that included the City of Elmira, the Elmira School Dis-

trict, Chemung County and Chemung County Sewer District. All of these debts were for taxes and fees. A class of secured creditors was created for the Chemung County Department of Social Services which retained its lien on the home. A class of secured creditors was created for the Small Business Administration which was to receive current payments on its mortgage. To make these payments, Mrs. Bellgraph is going to take approximately five years and hence no payments are offered to any unsecured creditors. She claimed as exempt under the plan $7,287.61 on the home under the Federal Exemption, $940.00 in total of household goods and personal effects and $764.00 in a checking account. The checking account was opened with Mrs. Bellgraph's oldest son, Richard Bellgraph, who has agreed to manage the debtor's financial affairs and to make the payments necessitated under the plan from that account.

At the meeting of creditors held on April 28, 1980, acceptances of the plan were filed by the Small Business Administration, the City of Elmira, who filed on behalf of itself and the County of Chemung, the Elmira City School District, the Chemung County Sewer District and the Arnot-Ogden Hospital. No objections were filed by any creditor. It was at this point that the question of good faith was raised and briefs were required to be filed by the attorneys for Mrs. Bellgraph addressing themselves to that particular argument.

"Good faith" has been the stumbling block for the confirmations of a number of Chapter 13 plans in the area in which this Court sits. The Court has read with great interest what the other Bankruptcy Courts have said about "good faith". The Courts · have gone everywhere from Judge Baker in the Western District of Arkansas in *In re Terry*, 3 B.R. 63, 66, 5 Bankr.Ct.Dec. 1397, 1399 (Bkrtcy.W.D.Ark.1980), confirming a minimal pay plan where he said, "it will bode ill for the Bankruptcy Courts to use the requirement of 'Good Faith' as a peg from which they spin a web of nebulous judicial requirements for confirmations

which have not been made by Congress", to the case of *In re Burrell*, 2 B.R. 650, 5 Bankr.Ct.Dec. 1321, 1323 (Bkrtcy.N.D.Cal. 1980), by Judge Hughes in the Northern District of California where he held that the payments were not substantial and that a Chapter 13 plan must propose to pay creditors in full or at least in substantial part. In view of § 727(a)(9), he held that Congress has defined "substantial payment as 70% or more of allowed unsecured claims".

■ Judge Mabey of the Utah District in *In re Iacovoni*, 2 B.R. 256, 5 Bankr.Ct.Dec. 1270 (Bkrtcy.D.Utah 1980), outlined the legislative history of Chapter 13 and set forth certain factors that Judge Mabey says must be considered before a Bankruptcy Judge confirms the plan. These factors are the budget of the debtor, the amount the debtor can feasibly pay, the future income and payment prospects of the debtor, the amount of the outstanding indebtedness, the percentage of repayment and the nature of the debts being discharged.

■ In most cases, an analysis of these factors will show whether or not the debtor is making a sincere, meaningful, honest effort to pay his creditors. If no sincere, meaningful, honest effort is being made to pay the creditors, but the debtor is merely trying to put himself within the purview of the law and to pay the least that may be paid under the test of best interest without any consideration of "good faith", the plan should not be confirmed.

■ It is one thing to deny confirmation of a plan for lack of "good faith" when the debtor is making no effort to pay his unsecured creditors and proposes to pay only those secured creditors who have liens upon the luxuries the debtors wish to keep, but debtors like the one in the case at bar are a different matter. Attempts to prevent the abuse of creditors' interest by defining "good faith" are laudable until a case such as this case founders upon the rocks of a too restrictive definition of "good faith". Congress' failure to define "good faith" is a mandate to the bankruptcy judges to re-view each case on its merits and to confirm only those cases which in view of the factors defined by Judge Mabey, *supra*, measure up to the Courts' sense of what is equitable in a given case. The approach must and should be a flexible one. There should be no exact percentage payment that will insure confirmation. Each case must be decided on its own merits.

The exceptional cases even amongst Courts that deny the confirmation of plans for lack of "good faith" are causing Courts to take a second look at their standards for "good faith". For instance, Judge Stewart in *In re Curtis*, 2 B.R. 43, 45, 5 Bankr.Ct. Dec. 1214, 1215 (Bkrtcy.W.D.Mo.1979), said,

As a final consideration, it must be noted that the proposed plan is in the best interest of creditors within the meaning of § 1325(a)(4) of the Bankruptcy Code insofar as it clearly offers them as much or more than they would receive under straight liquidation. It is doubtful whether the bankruptcy courts can redefine the minimum amounts required to be paid, already defined by the clear letter of that subsection, by importing an immutable higher minimum into the "good faith" provisions of § 1325(a)(3) of the Code. Therefore, the 10%-for-three-years guideline must remain subject to the "exceptional circumstances" rule. And exceptional circumstances exist in this case to warrant a confirmation of the plan.

■ The case at bar involves "exceptional circumstances" as does *In re Curtis, supra*. It is an exceptional case that requires confirmation because the debtor, to save her home from foreclosure, is proposing to pay off the taxes, pay off her secured creditors or allow them to maintain their security. The secured creditors have consented. No money is being spent to give her this relief. Her plan runs nearly five years. Chapter 7 relief would result in the loss of the home and probably less than full payment to even the secured creditors. No creditors will receive less than they would have in a liquidation. This plan because of the debtor's limited income is not only her "best effort", a test considered too strict

under the Code, but it is a super effort by the debtor to pay her debts and maintain her home.

Under these circumstances, to deny the debtor confirmation of her plan because of a restrictive definition of "good faith", would work an injustice. The plan is confirmed. It is so ordered.

This Memorandum and Decision shall constitute Findings of Fact and Conclusions of Law in accordance with Rule 752 of the Rules of Bankruptcy Procedure.