**In re Larry Hubert THACKER, Edwana Sink Thacker, Debtors.**

**Bankruptcy No. 7–80–00455.**

United States Bankruptcy Court,
W. D. Virginia,
Roanoke Division.

Nov. 3, 1980.

Ross Hart, Roanoke, Va., for debtors.

Melba C. Pirkey, Trustee.

Thomas P. Lloyd, Roanoke, Va., for Virginia Federal Savings & Loan Ass'n.

Martin R. Willis, Roanoke, Va., for First & Merchants National Bank.

Douglas W. Kielkopf, Roanoke, Va., for State Mortgage Corp.

Douglas D. Wilson, Roanoke, Va., for Vinton Leasing Co.

L. Richard Padgett, Jr., Salem, Va., for M. D. & Elaine L. Snow.

Alex A. Waldrop, Jr., Roanoke, Va., for Charlie E. Bane.

Frank N. Perkinson, Jr., Roanoke, Va., for C & P Tel. Co.

H. CLYDE PEARSON, Bankruptcy Judge.

The question before the Court is the confirmation of the Debtors' Chapter 13 plan.

Debtors herein, Larry H. Thacker and his wife Edwana Sink Thacker (Debtors) filed *pro se*, a Chapter 7 case in this Court on April 28, 1980 seeking a discharge of their debts. Debtors did not file a homestead deed or otherwise make proper claim to their exempt property. Later an attorney was chosen by the Debtors to represent them and the petition to convert their Chapter 7 proceeding to a Chapter 13 proceeding was filed.

A § 341 Meeting of Creditors was held on the Chapter 13 case on August 29, 1980 at which both Debtors appeared and were examined by the Trustee and creditors. A Confirmation Hearing was held later the same day. The Court took the matter under advisement and allowed Counsel for objecting creditors and trustee ten days within which to file memorandums outlining their grounds of objections to the Debtors' plan.

The basic disagreement with the proposed plan is registered by the objecting creditors was that the plan was "not in good faith" as required by 11 U.S.C. § 1325; that a

previous Chapter XIII was filed and aborted and that the present case was converted from Chapter 7.

■ The Debtors' plan provides to pay all secured creditors outside the plan all delinquent creditors to be paid at the rate of 1¼ payments per month until the delinquency is caught up, and all unsecured creditors to be paid 25% of their claims as proven and allowed. If the Debtors' estate were liquidated under Chapter 7, the holders of the unsecured claims would receive substantially less than they will under the proposed plan since the value of the property to be distributed under the plan on account of each unsecured claim is not less than the amount that would have been paid on that claim if the estate of the Debtors were liquidated under Chapter 7.

Consideration of the Debtors' case requires some analysis of the provisions of the *Bankruptcy Reform Act of 1978* and its "good faith" prescription.

Good faith is not defined in the *Bankruptcy Reform Act of 1978*. But, Section 656 of the Bankruptcy Act of 1898 set out the requirements to obtain confirmation of a Chapter XIII plan. Section 656(a)(4) provides that: "The court shall confirm a plan if satisfied that–(4) the proposal and its acceptance are in good faith and have not been made or procured by any means, promises, or acts forbidden by this Act."

In discussing the good faith requirement of Section 656(a)(4) of the Act, Collier stated that:

> "Fraud, improper scheduling, payment or promises to pay money to procure acceptances are instances of lack of good faith as well as acts barred by the statute. Good faith itself is not defined but generally the inquiry is directed to whether or not there has been an abuse of the provisions, purpose, or spirit of Chapter XIII in the proposal or plan."

10 *Collier on Bankruptcy* § 29.06[6], (14th ed. 1978).

■ Under § 366 of former Chapter XI and § 656 of former Chapter XIII, the court was required to find good faith as a condition of confirmation. However, research does not disclose a case which concluded or even suggested in dictum that the term "good faith" was related to the amount of payment to the creditors. *See e. g. In re Harland*, 3 B.R. 597, 598 (Bkrtcy., D.Neb. 1980); *Gonzalez Hernandez v. Borgos*, 343 F.2d 802 (1st Cir. 1965); *In re Tennessee Publ. Co.*, 81 F.2d 463 (C.A.Tenn.1936); *In re Agregatos De Manati, Inc.*, 357 F.Supp. 1263 (D.C.Puerto Rico, 1973); *In re Wright*, 247 F.Supp. 648 (E.D.Mo.1965); *In re Ware Metals Products*, 42 F.Supp. 538 (D.C.Mass. 1941); *In re Vater*, 14 F.Supp. 631 (D.C.Ky. 1936).

Even though Collier suggests that the good faith requirement of old Chapter XIII requires an "... [inquiry as to] whether or not there has been an abuse of the provisions, purpose, or spirit of Chapter XIII in the proposal of the plan" 10 Collier ¶ 2906 (14th ed. 1978), another commentator, in discussing good faith under 11 U.S.C. § 524, suggests an analogy to the definition of good faith in the Uniform Commercial Code as "honesty in fact". Aaron, *The Bankruptcy Reform Act of 1978; The Full Employment for Lawyers Bill*, 1979 Utah Law Review 175, 219 [citing U.C.C. § 1–201(19)]. Importantly, neither authority suggests that the term good faith should be given anything beyond its ordinary and commonly–accepted meaning.

The Congress is presently considering proposed technical amendments to the *Bankruptcy Reform Act of 1978* which would alter § 1325(a)(3). If that bill is enacted, § 1325(a)(3) would read:

> (a) The court shall confirm a plan if–(3) the plan has been proposed in good faith and not by any means forbidden by law *and represents the debtors good faith effort*; (emphasis added)

S. 658 96th Cong. 15 Sess. § 128(b) (1979).[1]

In the recently decided case of *In re Harland, supra*, Judge David L. Crawford

---

1. As it stands now, 11 U.S.C. § 1325 reads in pertinent part:
   (a) The court shall confirm a plan if–

   (1) the plan complies with the provisions of this chapter and with other applicable provisions of this title;

quoted the proposed technical amendments reading as follows:

> The plan is the debtor's *best effort* and has been proposed in good faith and not by any means forbidden by law. (emphasis added).

The Judge noted that significantly, a "best efforts" test was inserted but the good faith standard was not diluted. He noted at 3 B.R. 599:

> Apparently, Congress itself does not consider that good faith is tied to any concept of a minimum repayment schedule.

> Clearly, the "good faith" provision of § 1325(a)(3) cannot be defined in terms of the good faith standard of § 727(a)(9)(B) which provides for a 70% plan. The section just cited, § 727(a)(9)(B), provides that a debtor who has paid less than all of his debts under a Chapter 13 plan may not receive a discharge in a Chapter 7 proceeding for six years unless he has paid:

> (i) 70 per cent of such claims; and

> (ii) the plan was proposed by the debtor in good faith, and was the debtor's best effort.

The Trustee argues that the spirit and the purpose of Chapter 13 require a good faith standard as applied to the Debtor's present as well as future ability to pay according to its proposed plan. Although it may seem rational to link good faith to a repayment schedule there are two good reasons why such a resolution should not be undertaken by the court. First, and quite

obviously, there is not even a trace of language in the Bankruptcy Reform Act of 1978 nor in the Legislative History to indicate in any wise that good faith was intended to have such a meaning. Second, once such a proposition is adopted, the concept of good faith becomes a very subjective decision as is evidenced by the diversity of reported cases. *See In re Beaver*, 2 B.R. 337 (Bkrtcy., S.D.Cal.1980) ("Meaningful payments"); *In re Curtis*, 2 B.R. 43 (Bkrtcy., W.D.Mo.1979) ("at least 10%"); *In re Iacovoni*, 2 B.R. 256 (Bkrtcy., D.Utah 1980) ("meaningful payments but less than best efforts"); *In re Campbell*, 3 B.R. 57 (Bkrtcy., S.D.Cal.1980) ("substantial payment"); *In re Howard*, 3 B.R. 75 (Bkrtcy., S.D.Cal.1980) ("substantial payment"); *In re Burrell*, 2 B.R. 650 (Bkrtcy., N.D.Cal. 1980) ("at least 70%"); *In re Powell*, 2 B.R. 314 (Bkrtcy., E.D.Va.1980); *In re Forrest* (N.D.Cal.1980); *In re Harland*, 3 B.R. 597 (Bkrtcy., D.Neb.1980).

Some courts have recently held that a zero or minimal payment plan could be confirmed if the other requirements of § 1325(a) are met. *See In re Terry*, 3 B.R. 63 (Bkrtcy., W.D.Ark.1980); *In re Keckler*, 3 B.R. 155 (Bkrtcy., N.D.Ohio 1980). *But see contra, In re Cook*, 3 B.R. 480 (Bkrtcy., S.D.W.Va.1980). As the court stated in *Terry*, in an attempt to interpret § 1325(a):

> In an area as fraught with enmity and misunderstanding as is created by discharge of debts in bankruptcy, this Court is reticent to tack onto the work of Con-

(2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation; has been paid;
(3) the plan has been proposed in good faith and not by any means forbidden by law;
(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of cash allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;
(5) with respect to each allowed secured claim provided for by the plan–
    (A) the holder of such claim has accepted the plan;

    (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and ·
    (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
    (C) the debtor surrenders the property securing such claim to such holder; and
(6) the debtor will be able to make all payments under the plan and to comply with the plan.
(b) After confirmation of a plan, the court may order any entity from whom the debtor receives income to pay all or any part of such income to the trustee.

gress its own notions of what debtors ought to do in order to be afforded a discharge from their debts.

*Terry, supra* at 66.

This Court notes the argument of the trustee and other creditors who claim that the plan as proposed does not provide sufficient payments over the time stated for the creditors to realize anything even resembling their original contractual arrangement. As previously mentioned, neither the Act itself nor the accompanying legislative history suggests such a criterion as a qualification to confirmation of a Chapter 13 plan.

The well–reasoned opinion by Judge Baker in *In re Sadler*, 3 B.R. 536 (Bkrtcy., E.D.Ark.1980) contains the following at Page 536, which warrants repeating.

"This Court is aware that other Bankruptcy Courts have used the "good faith" requirement to require payments of some amount to unsecured creditors and that some Courts have even set fixed percentages for unsecured creditors before they will find good faith and confirm. This Court is of the opinion that "good faith" must be referring to something other than the amount of payments to unsecured, because 11 U.S.C. § 1325(a)(4) specifically sets forth the amount which, if paid to unsecured, mandates confirmation. To require more than what Congress has said is enough is usurpation of legislative powers.

If Congress had intended that some minimum payment, other than what is required by 11 U.S.C. § 1325(a)(4), must be made to unsecured creditors, it could have done so quite easily. Congress did not say that unsecured creditors must be paid at least $1.00 or $10.00 or 1% or 5% or 70% before a plan can be confirmed. Congress said unsecured creditors must be paid " ... not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7 ...". 11 U.S.C. § 1325(a)(4). That provision of the Code is the polestar for what is required to be paid to unsecured creditors. It would be

outrageously presumptive for a Court to move that Congressional polestar about the landscape in the name of "good faith". Such judicial maneuvering constitutes appropriation of legislative power."

"Good faith"–an oft–maligned term–is a simple concept. Whatever it is claimed to be by the myriad of decisions cited herein it is essentially a lack of "bad faith". Courts should never presume a lack of good faith. The law universally presumes that man acts upright and honest. Like fraud, which is never presumed aside from some rare circumstances, neither is a lack of good faith presumed. And, bad faith is readily recognizable in areas closely akin to fraud, duress, bad intentions, or malfeasance, for example. Trustee and objecting creditors allude to another Chapter XIII case and conversion of this Chapter 13 from Chapter 7 as evidence of lack of good faith. Good faith is not abrogated by a showing that the Debtors had previously converted their case from a Chapter 7 to a Chapter 13 case or previously had filed a Chapter XIII case. A conversion pursuant to 11 U.S.C. § 706(a) is not in and of itself an indication of bad faith; on the contrary it indicates a willingness on the part of the debtors to repay their debts. Further there is nothing inherently wrong, dishonest or improper about a debtor converting from a liquidation proceeding to a Chapter 13 proceeding in order to save his home and secure assets not otherwise available. Indeed, the bottom line of most Chapter 13 cases is to preserve and avoid foreclosure of the family house. This is particularly true where a Chapter 7 case is filed without the advice of counsel. In the case of *In re Conway* (Bkrtcy., E.D.Pa.1980) 2 C.B.C.2d 971, 5 B.R. 251, the Court stated that the mere fact that debtor had two previous Chapter 13 proceedings dismissed is not sufficient in and of itself to dismiss, deny confirmation or adjudge bad faith.

Many of the courts construing good faith and its significance in a Chapter 13 plan have given a different interpretation of the term. "Good faith" is not subject to

a quantitative analysis; it is governed by a subjective standard which is not keyed to the amount of payments proposed by the debtor. All factors including the needs of the debtor, his expenses, budget proposals and income should be taken into consideration as well as his proposed payments into the plan. Courts should not disregard all other factors except that of "amount of payment into the plan" with some degree of regularity.

■■■■ Many courts seem to have struggled with the term "good faith" to a point at which the burden upon a debtor to prove good faith is an insurmountable hurdle. In determining the Congressional intent in the application of Chapter 13 it must be remembered that it is a rehabilitative statute to be liberally construed to effect its purpose of rehabilitating a distressed debtor who comes within its terms. It seems inappropriate for courts to search meticulously for factors that may tend to show a lack of good faith in order to deny confirmation. Such construction by the courts is a torture of Congressional intent and of the provisions of Chapter 13 and its traditional purpose under the *Bankruptcy Act of 1898*, as well as the *Bankruptcy Reform Act of 1978*. The omission in Chapter 13 of the requirement for acceptance of the plan by creditors would seem to express a Congressional intent to broaden the available remedy to debtors rather than restrict such remedies. Indeed, the jurisdictional requirements qualifying a Debtor for Chapter 13 have been greatly enlarged. There has been liberalization of the requirement as to income, amount of debt and powers of the Trustee and amount of claims of creditors. *See* 11 U.S.C. §§ 1301, 1302. In 11 U.S.C. § 1322, providing for the contents of a plan, the Congressional intent is crystalized. The provisions thereof provides for modification of secured claims, curing default, classification of claims among others. Therefore, it would seem inappropriate for courts to focus unduly on a question of good faith in a manner which distorts Congressional intent in the interpretation by the courts of the Chapter 13 provisions.

When Congress enacted the *Bankruptcy Reform Act of 1978*, it greatly broadened and liberalized the provisions of Chapter 13. New to the 1978 Act were the cram–down provisions of 11 U.S.C. § 1322 and the co–debtor stay provision of 11 U.S.C. § 1301. New also were several significant advantages to a Chapter 13 over straight bankruptcy for the consumer debtor and creditor. *See generally* Lee, *Chapter 13 nee Chapter XIII*, 53 Am.Bankr.L.J., 1979, p. 305. Among the distinct advantages other than the co–debtor stay and the cram–down feature, is the debtor's ability to continue to use items of personal property encumbered by a lien while redeeming the property under the plan. *See* 11 U.S.C. § 1303. Another important advantage available under Chapter 13 is that the debtor may obtain release from nondischargeable, unsecured debts, other than claims entitled to priority or for alimony or child maintenance, by partial payment of claims under a composition plan. *See* 11 U.S.C. § 1328(a).

The success or failure of a Chapter 13 debtor to comply with the confirmation order is something the court must consider at a point "down the road". Congress provided for this eventuality in 11 U.S.C. § 1307(c)(5) in which a Chapter 13 case may be dismissed or converted for "material default by the debtor with respect to a term of a confirmed plan". A court should not attempt to project into future circumstances concerning the question of default of the confirmed plan. That matter should be properly heard and determined at a point following confirmation when the plan is not being complied with.

The Court is mindful of the arguments of the Trustee and creditors against confirmation. If the order granting confirmation is not complied with, the case should be promptly brought before the Court for redress of the problems presented.

It is the considered judgment of the Court that the plan was presented in good faith and meets the other requisites of 11 U.S.C. § 1325. Accordingly, an Order of Confirmation will be entered in accordance with the proposed plan and the Trustee shall submit a proposed order.