**In re William C. COSTEN, Jr., Debtor.**

**Bankruptcy No. 7–81–00546.**

United States Bankruptcy Court,
W.D. Virginia,
Roanoke Division.

April 17, 1984.

Donald W. Huffman, Roanoke, Va., for debtor.

Evans B. Jessee, Roanoke, Va., for Commercial Credit Corp.

W. Courtney King, Roanoke, Va., for Charter Federal Sav. & Loan Assn.

Melba C. Pirkey, Roanoke, Va., Chapter 13 Trustee.

## MEMORANDUM OPINION

H. CLYDE PEARSON, Bankruptcy Judge.

With leave of Court and pursuant to 11 U.S.C. § 1329, the Debtor, on February 24, 1984, filed a modified Plan, which came before the Court upon hearing for confirmation on April 4, 1984.

The only objection to the modified Plan was filed by Commercial Credit Corporation, holder of a second Deed of Trust upon certain lots of land upon which the Debtor's residence is located. The essence of the objection of Commercial Credit Corporation dealt with the requirement of 11 U.S.C. § 1325(a)(6) questioning whether or not the Debtor can make payments necessary to comply with the modified Plan.

It appeared from the evidence and the Debtor's Plan, the contents of which was not disputed, that this Debtor's original confirmed Plan, entered by the Court on September 4, 1981, has had many fluctuating circumstances, among which being the uncertainty of the Debtor's income, the ability of the Debtor to liquidate certain assets constituting an undue burden from secured creditors on said assets, as well as the substantial payments required under the original Plan. As a result of these factors, this Chapter 13 case has been before the Court because of the Debtor's inability to comply.

The modified Plan recites, and it is not disputed, that during the pendency of this case, the Debtor has paid in full by sale of assets, with Court approval or through the Trustee, the following claims:

Colonial-American National Bank – $1,912.14
Grand Piano – 300.00
Liberty Bank of Bedford – 31,249.68
Virginia National Bank – 8,614.17

Payments further were made to remaining secured creditors as follows:

Beneficial discount – $2,929.80
Chesapeake Bank & Trust Co. – 2,555.55
Commercial Credit Corp. – 8,805.05
Charter Federal Savings & Loan – 12,445.16

The evidence further shows that the Debtor's residence has a value of approximately $175,000.00; that Charter Federal Savings and Loan Association has a first Deed of Trust upon which the modified Plan provides payments, and that Commercial Credit Corporation holds a second Deed of Trust upon which the modified Plan proposes payments currently in arrears. The evidence further shows that Commercial Credit Corporation is adequately secured and that the Debtor holds substantial equity in the residence over and above the first and second Deeds of Trust, and that this real estate is in good repair, maintaining its value, and the secured creditors will remain adequately protected pending proposed payments provided by the modified Plan.

The Debtor testified upon hearing of the modified Plan that his income was now more substantial, regular, and much more dependable than in the past; that certain deductions for tax liabilities had been terminated, thereby freeing funds of $500.00 or so, making these funds available to fund the Plan; that the income currently derived from his employment was adequate for the payment of the $2,200.00 proposed in the modified Plan to the Trustee.

The Congress, by enacting Chapter 13 in the Bankruptcy Reform Act of 1978, modified the existing "Wage Earner Act" substantially and liberalized its provisions. The thrust of these Chapter 13 provisions is to grant courts substantial latitude in dealing with cases administered under this Chapter and, hopefully, rehabilitating distressed debtors by permitting payments from future earnings to creditors.

In the case of *In re Thacker*, 6 B.R. 861 (Bkrtcy.W.D.Va.1980), in dealing with Chapter 13 statutory provisions as it related to good faith, stated generally as follows:

"Many courts seem to have struggled with the term 'good faith' to a point at which the burden upon a debtor to prove good faith is an insurmountable hurdle. In determining the Congressional intent in the application of Chapter 13, it must be remembered that it is a rehabilitative statute to be liberally construed to effect its purpose of rehabilitating a distressed debtor who comes within its terms. It seems inappropriate for courts to search meticulously for factors that may tend to show a lack of good faith in order to deny confirmation. Such construction by the courts is a torture of Congressional intent and of the provisions of Chapter 13 and its traditional purpose under the Bankruptcy Act of 1898, as well as the Bankruptcy Reform Act of 1978. The omission in Chapter 13 of the requirement for acceptance of the plan by creditors would seem to express a Congressional intent to broaden the available remedy to debtors rather than restrict such remedies. Indeed, the jurisdictional requirements qualifying a Debtor for Chapter 13 have been greatly enlarged. There has been liberalization of the requirement as to income, amount of debt, and powers of the Trustee and amount of claims of creditors. See 11 U.S.C. §§ 1301, 1302. In 11 U.S.C. § 1322, providing for the contents of a plan, the Congressional intent is crystalized. The provisions thereof provides for modification of secured claims, curing default, classification of claims among others. Therefore, it would seem inappropriate for courts to focus unduly on a question of good faith in a manner which distorts Congressional intent in the interpretation by the courts of the Chapter 13 provisions.

When Congress enacted the Bankruptcy Reform Act of 1978, it greatly broadened and liberalized the provisions of Chapter 13. New to the 1978 Act were the cram-down provisions of 11 U.S.C. § 1322 and the co-debtor stay provision of 11 U.S.C. § 1301. New also were several significant advantages to a Chapter 13 over straight bankruptcy for the consumer debtor and creditor. See generally Lee, Chapter 13 nee Chapter XIII, 53 Am.Bankr.L.J., 1979, p. 305. Among the distinct advantages other than the co-debtor stay and the cram-down feature, is the debtor's ability to continue to use items of personal property encumbered by a lien while redeeming the property under the plan. See 11 U.S.C. § 1303. Another important advantage available under Chapter 13 is that the debtor may obtain release from nondischargeable, unsecured debts, other than claims entitled to priority or for alimony or child maintenance, by partial payment of claims under a composition plan. See 11 U.S.C. § 1328(a).

The success or failure of a Chapter 13 debtor to comply with the confirmation order is something the court must consider at a point 'down the road'. Congress provided for this eventuality in 11 U.S.C. § 1307(c)(5) in which a Chapter 13 case may be dismissed or converted for 'material default by the debtor with respect to a term of a confirmed plan'. A court should not attempt to project into future circumstances concerning the question of default of the confirmed plan. That matter should be properly heard and determined at a point following confirmation when the plan is not being complied with."

11 U.S.C. § 1325(a)(6) provides that, among other requirements in considering the confirmation of a Plan, the court is required to find that the debtor will be able to make the payments provided for under the Plan. Congress, by enacting this provision, necessarily provided the court with a rule requiring substantial discretion and an element of flexibility. In the consideration of a Chapter 13 Plan where the funding is made from future earnings, courts naturally are unable to foretell all eventualities that may arise in the future preventing a debtor from making the required payments and complying with the Plan. Realizing the difficulty courts may engender, Congress enacted 11 U.S.C. § 1329 providing for post-confirmation modification of debtors' Plans. This Section contemplates financial difficulties which may arise following confirmation, as well as unforeseen circumstances relating to the uncertainty of many debtors' incomes, emergency expenses, and other individual problems.

In consideration of all the foregoing, the Court finds from the evidence and all the facts and circumstances that the modified Plan meets the requirements of the statute and that the Debtor can meet the payments proposed in the modified Plan and, accordingly, an Order of Confirmation will be entered in accordance therewith, which further will deny relief from the stay as requested by Commercial Credit Corporation in its Adversary Proceeding No. 7–82–0481.