**In re Guillermo VIVADO, Dalia Vivado, Debtors.**

**Bankruptcy No. 88–00042.**

United States Bankruptcy Court, District of Columbia.

Jan. 13, 1989.

Linda Perilstein, Washington, D.C., for debtors.

Byron Huffman, Landover, Md., for Washington Federal Sav. Bank.

Nicholas Hantzes, Washington, D.C., for American Sec. Bank.

Cynthia Niklas, Washington, D.C., Trustee of Chapter 13 case.

MEMORANDUM OF DECISION

PAUL MANNES, Bankruptcy Judge, Sitting by Designation.

This matter is before the court on the court's own order to show cause why the compensation of $850.00 paid by the debtors to their attorney, Linda Perilstein, ought not be returned. American Security Bank additionally filed a motion seeking an order directing Ms. Perilstein to return all fees paid by debtors.

Prior to the issuance of the order to show cause, Ms. Perilstein became aware of the court's remarks made at the confirmation hearing on August 3, 1988. At that hearing, the court granted the motion of the Chapter 13 trustee to dismiss the case. The court commented that debtors' counsel demanded and received an $850.00 fee for filing a Chapter 13 case when the Chapter 13 statement prepared by counsel demonstrated that debtors were not eligible to file a case under Chapter 13. Debtors' list of unsecured debts totalled $124,810.00. 11 U.S.C. 109(e) provides:

> (e) Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $100,000 and noncontingent, liquidated, secured debts of less than $350,000, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $100,000 and noncontingent, liquidated, secured debts of less than $350,000 may be a debtor under chapter 13 of this title.

On November 17, 1988, Ms. Perilstein filed a pleading entitled "Motion for Reconsideration and Opposition to Motion for Entry of Order to Dismiss Petition and Return Attorneys Fees." From the pleading the court observes that counsel believes an

additional $741.31 is due to her, besides the $850.00 paid, or a total of $1591.31. In her motion counsel stated:

> Undersigned counsel was retained by debtors on January 13, 1988 for the stated purpose of forestalling a threatened foreclosure on the debtors' home, which was scheduled to be held on January 21, 1988. As the attached statement of fees demonstrates, undersigned counsel spent a significant amount of time prior to the institution of the bankruptcy action negotiating with the debtors' creditors to avoid foreclosure and/or the filing of the bankruptcy action. When it became clear that said negotiations would not be successful, *undersigned counsel prepared a petition in bankruptcy for debtors as well as the accompanying schedules and other documents, all of which were timely filed so as to cause the cancellation of the foreclosure sale schedule for January 21, 1988. To that extent, undersigned counsel effectively represents her clients and accomplished their goal of avoiding foreclosure.* The fees charge were more than reasonable earned fully and by undersigned counsel. (Emphasis added)

When counsel appeared before the court at the hearing on the order to show cause on December 13, 1988, she admitted that she was unaware of the limitation on the amount of debt in a case under Chapter 13 when she filed the petition. That is, she was unaware that the debtors were ineligible to file a petition under Chapter 13.

This matter comes before the court pursuant to 11 U.S.C. § 329 and Fed.R. Bankr.P. 2017(a):

**§ 329. Debtor's transactions with attorneys.**

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contempla-tion of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

(1) the estate if the property transferred—

(A) would have been property of the estate; or

(B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or

(2) the entity that made such payment.

**Rule 2017. Examination of Debtor's Transactions with Debtor's Attorney.**

**(a) Payment or Transfer to Attorney Before Commencement of Case.** On motion by any party in interest or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property by the debtor, made directly or indirectly and in contemplation of the filing of a petition under the Code by or against the debtor, to any attorney for services rendered or to be rendered is excessive.

A brief summary of this case is appropriate. On January 21, 1988, the debtors, Guillermo and Dalia Vivado, filed a voluntary petition under Chapter 13 and an accompanying Chapter 13 Statement. The answer to Question 9(a) on the Chapter 13 Statement showed that the Washington Federal Savings Bank was proceeding to foreclosure of a loan secured by debtors' home located at 4313 Embassy Park Drive, N.W., Washington, D.C. The list of unsecured debts filed in response to Question 12(c) of the Chapter 13 Statement showed a total of $124,810.00 in unsecured debts.

Counsel's Rule 2016(b) Statement provided in part:

(1) The undersigned is the attorney for the debtor(s) in this case.

(2) The compensation paid or agreed to be paid by the debtor(s) to the undersigned is:

(a) for legal services rendered or to be rendered in contemplation of or in connection with this case . . . . . . . . . . . . . . . . . $850.00

(b) prior to filing this statement, debtor(s) have paid . . . . . . . . . . . . . . . . . $850.00

(c) the unpaid balance due and payable is . . . . . . . . $ -0-

(3) $90.00 of the filing fee in this case has been paid.

(4) The services rendered or to be rendered include the following:

(a) analysis of the financial situation, and rendering advice and assistance to the debtor(s) in determining whether to file a petition under Title 11 of the United States Code.

(b) preparation and filing of the petition, schedules, statement or affairs and other documents required by the court.

(c) representation of the debtor(s) at the meeting of creditors.

The papers originally filed did not include a Chapter 13 Plan, nor was one filed prior to the notice to all creditors dated February 11, 1988, advising of a creditors' meeting pursuant to 11 U.S.C. § 341(a) and the time of the confirmation hearing. Although no Chapter 13 Plan appears to have been filed, the trustee's objection regarding confirmation and her motion to dismiss filed March 10, 1988, speaks of a "variable-rate plan" providing for a total funding of $45,000.00.

On March 3, 1988, counsel for debtors filed a motion seeking the postponement of the confirmation hearing set for May 13, 1988, until a date subsequent to May 24, 1988, the bar date for the filing of claims. The reason espoused by counsel was so that "the court can evaluate debtors' plan in light of the claims filed." That motion was granted on March 4, 1988 (Teel, J.).

On May 25, 1988, counsel for the debtors filed a motion for leave to withdraw stating that "[d]ebtors have failed and refused to cooperate with undersigned counsel, to such a degree as to prevent her from effectively representing them." The court (Teel, J.) granted that motion on May 25, 1988.

The matter came before the court on the confirmation of debtors' plan on August 3, 1988. Confirmation was denied, and the trustee's motion to dismiss was granted because debtors were not eligible filers.[1] At the confirmation hearing, neither of the debtors appeared. The court indicated that it would enter an order requiring counsel for the debtors to refund all fees. While the order had not been entered, counsel filed the motion for reconsideration previously described.

What counsel does not understand is that the action she took in this case was an abuse of process and a perversion of the bankruptcy law in order to obtain an unjust and improper result. Counsel filed a petition for individuals under Chapter 13 for debtors not eligible under such chapter. Counsel's filing on behalf of the debtors was a sham. The Vivados were unable to commence a voluntary case under Chapter 13. 11 U.S.C. § 301.

## DISCUSSION

The focus of this discussion is the amount of compensation, if any, to be awarded counsel who files a sham bankruptcy proceeding to stop a foreclosure and for no other purpose. From the outset, it must be made clear that merely filing a bankruptcy petition to stop a foreclosure is not in itself evidence of bad faith so as to preclude confirmation of a debt-adjustment plan. "Indeed, the bottom line of most Chapter 13 cases is to preserve and avoid foreclosure of the family house." *In re Thacker*, 6 B.R. 861, 865 (BC W.D.Va. 1980). From studying a number of cases, the court concludes that a Chapter 13 case is filed in bad faith if it is filed without any measurable intention or ability of consum-

1. The debtor, Guillermo Vivado, is an economist employed by the World Bank. His salary at the time of filing was $5,265.90 a month. The only monthly deductions from that salary were insurance of $172.32, the repayment of a loan to the World Bank of $522.98, and a retirement contribution of $601.66. Dalia Vivado was unemployed.

mating a Chapter 13 Plan or if it is filed by someone barred either by statute or by the facts of the case from proposing a confirmable plan.[2]

The question raised by this court is precisely the same one raised by former Judge Whelan in *In re Whitten*, 11 B.R. 333 (BC D.C.1981). Judge Whelan stated the issue as follows:

> The issue to be addressed in this Rule 220 hearing is whether Chapter 13 of the Bankruptcy Code may be utilized to stay a foreclosure sale, when the intent is to use the delay afforded by the automatic stay provision of 11 U.S.C. § 362 solely to seek refinancing of the debtor's residence and with no intent to ever effectuate a Chapter 13 plan. The Court, after careful review of the legislative history and statutory provisions dealing with the contents of a Chapter 13 plan (11 U.S.C. § 1322), is of the opinion that such use of Chapter 13 is improper and a debtor's attorney who initiates a case solely for this reason, violates the spirit and proscriptions of Bankruptcy Rule 911. However, based on the facts of this case and for reasons which will be fully set forth in this opinion, the Court declines to impose any sanctions as to this debtor's counsel.

*Id.* at 334–35 (footnote omitted).

Judge Whelan concluded:

> The facts of this case, as evidenced by the motion for extension of time within which to file a Chapter 13, clearly supports this Court's conclusion that the primary goal in filing this case was to delay a threatened foreclosure so as to permit the debtor additional time in which to secure final approval of an already pending refinancing transaction. Accordingly, the Court concludes that this case was initiated solely for purposes of delay within the meaning of Bankruptcy Rule 911(a). When an attorney signs a pleading, he must be fully satisfied that there are good grounds to support the pleading filed. In this case, if refinancing alone is

> not a legitimate purpose to be sought by the filing of a Chapter 13, and the plan is one that is not susceptible to confirmation by reference to the stated statutory standards, counsel has not met his obligation under the stated rule.

*Id.* at 339–40 (footnote omitted).

In *In re King*, 83 B.R. 843 (BC M.D.Ga. 1988), Judge Hershner dealt with debtors that filed Chapter 11 cases in the Middle District of Georgia on May 8, 1987, in order to stay prosecution of a civil suit in a Texas State court set for trial on May 11, 1987. In order to obtain counsel in Texas, the debtors filed the bankruptcy proceedings to provide enough time for counsel to undertake the litigation. Judge Hershner commented:

> Filing a bankruptcy petition simply to forestall and delay a state court action, with no intention to effectuate a legitimate reorganization, constitutes an abuse of the Bankruptcy Code. *See In re Indian Rocks Landscaping of Indian Rocks Beach, Inc.*, 77 B.R. 909 (Bankr.M. D.Fla.1987). In filing a Chapter 11 bankruptcy petition, good faith requires that the debtor have a reasonable expectation of reorganization. *In re French Gardens, Ltd.*, 58 B.R. 959, 964 (Bankr.S.D. Tex.1986). *Cf. United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 108 S.Ct. 626, 632, 98 L.Ed.2d 740 (1988) (when an unsecured creditor files a motion for relief from the automatic stay, the debtor must show that property is "essential for an effective reorganization *that is in prospect*" to prevail (emphasis in original)). Once a creditor has established a prima facie case of a bad faith filing, the burden shifts to the debtor to show a legitimate purpose for the filing of the bankruptcy petition, namely, to reorganize. *See In re Eighty South Lake, Inc.*, 63 B.R. 501, 508–09 (Bankr.C.D.Cal.1986).

*In re King*, 83 B.R. at 847. *See also, In re Nelson*, 66 B.R. 231 (BC N.J.1986).

**2.** While this case does not necessarily involve the determination of the good faith of either counsel or her clients, the reader is referred to

the case of *In re Easley,* 72 B.R. 948 (BC M.D. Tenn.1987) for an encyclopedic discussion of the issue of "good faith" in Chapter 13 cases.

Finally, in a case with some similarity to this case, *In re Kinney*, 51 B.R. 840 (BC C.D.Cal.1985), the court was faced with abusive *seriatim* filings principally involving one attorney, one family, one piece of real property, one transfer, and ten filings. Counsel signed the documents in the bankruptcy filings and believed it proper to file bankruptcy petitions to delay or prevent creditors from realizing on their collateral. The court noted:

> Ms. Coleman repeatedly testified to her belief that a debtor has the substantive equivalent of a constitutional right to utilize the automatic stay to protect property from foreclosing creditors. Coleman stated that such filings are not made in bad faith, even if the debtor does not have the ability to reorganize.

> Though she is an experienced bankruptcy attorney, Ms. Coleman believes that her abusive use of the Bankruptcy Code for the sole purpose of delaying foreclosure is proper. This belief lacks sound authority and is outrageous in these circumstances.

\*   \*   \*   \*   \*   \*

This Court finds that Attorney Coleman's conduct was unreasonable and vexatious. Ms. Coleman's "good faith" belief in some penumbral constitutional right to file multiple petitions involving the same piece of property without a change of circumstances nor an intent to reorganize does not exculpate her from liability. Without any case authority or reasonable extension or reversal of existing case precedent to support her belief, she acted totally unreasonably in the later Kinney cases. *See In re Perez*, 43 B.R. [530] at 533 [Bankr.S.D.Tex.1984]. Counsel has a duty to act within the law and to advise her clients as to the current state of the law and cannot insulate herself from sanctions by claiming that she believed the law to be other than it is. *In re Kinney*, 51 B.R. at 847–48.

Considering all of the above, the court will limit compensation to counsel to the sum of $200.00 to recompense her for the initial conference and any follow-up telephone calls. To allow counsel any further funds would be to reward someone who, by her own admission, filed an abusive case.

An order will be entered in accordance with the foregoing.