**In re Howard KING, Debtor.**

**Bankruptcy No. 91–04294.**

United States Bankruptcy Court, N.D. Florida, Pensacola Division.

Aug. 13, 1991.

Benjamin Beard, Pensacola, Fla., for FmHA.

James Magaha, Pensacola, Fla., for debtor.

David Rogers, Atlanta, Ga., Trustee.

## ORDER ON MOTION FOR RELIEF FROM STAY

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

### I. *Introduction*

The present cause comes before the Court on the United States' Motion to Lift Stay. The United States alleges that the debtor filed the bankruptcy action solely to forestall the Judgment of Foreclosure.

Thus, the United States contends that the action was filed in bad faith and is an abuse of the judicial process. The Court, however, concludes that the filing of the Chapter 13 plan was not instituted solely on meretricious grounds. Accordingly, the Court denies the United States' Motion to Lift Stay, but will condition the continuation of the stay on strict compliance with the order of this Court.

### II. *Facts*

On April 16, 1982, the United States, through its agency the Farmers Home Administration (FHA), loaned $29,500.00 to Howard King ("King" or "Debtor") so that King could purchase a principal residence. This loan was secured by a real estate mortgage in favor of the United States. King, however, became delinquent on his mortgage payments; moreover, he failed to maintain adequate insurance on the house as the mortgage contract provided. The FHA repeatedly contacted King about the arrearage and his chronic delinquency; however, no response from King was forthcoming. After exhausting all other remedies the FHA instituted foreclosure proceedings against the debtor.

In the foreclosure action, the District Court granted summary judgment to the United States and entered a Judgment of Foreclosure against the debtor. The District Court found that King had breached his mortgage contract and that he owed the United States a balance due of $43,908.68. Accordingly, King was directed to pay the United States the amount due on the note and mortgage within ten (10) days of the order. The Judgement of Foreclosure further stated that should King fail to comply with the order and make full payment to the United States within the prescribed time, then the mortgaged property would be subject to a sale by the United States Marshal.

King failed to comply with the order of the District Court. Pursuant to the decree of foreclosure, the United States Marshal scheduled a sale of the property for March 20, 1991. The Marshal's scheduled sale, however, was never consummated. The day before the sale, March 19, 1991, the

debtor voluntarily instituted relief proceedings under Chapter 13 of the Bankruptcy Code, thereby invoking the automatic stay of 11 U.S.C. § 362(a) and prohibiting the foreclosure sale.

III. *The Requirement of Good Faith*

Although difficult to define, the requirement of good faith is of supreme importance when ruling on the issue of confirmation plans:

> Confirmation of a Chapter 13 plan requires the exercise of judicial discretion and assessment of evidence by a bankruptcy judge. The good faith requirement is one of the central, perhaps the most important confirmation finding to be made by the court in any Chapter 13 case.

*In re Kull,* 12 B.R. 654, 658 (S.D.Ga.1981), *aff'd sub nom., Kitchens v. Georgia R.R. Bank and Trust Co. (In re Kitchens),* 702 F.2d 885 (11th Cir.1983). Moreover, good faith is a nebulous concept which the courts have struggled to define. There is, moreover, scant legislative guidance on the issue of good faith—the bankruptcy statutes offer little explanation of what constitutes good faith:

> Congress has nowhere in the statute provided a definition of the term "good faith." The legislative history is similarly silent on the point. The interpretation that should be given the ambiguous term ... has stirred no small debate among lower courts presented with Chapter 13 plans ...

*Deans v. O'Donnell,* 692 F.2d 968, 969–70 (4th Cir.1982). The judiciary, therefore, must fill the Congressional gaps left in the statutory scheme of the Bankruptcy Code. The courts have focused on this issue, stating:

> [A] comprehensive definition of good faith is not practical. Broadly speaking, the basic inquiry should be whether or not under the circumstances of the case there has been abuse of the provisions, purpose, or spirit in the proposal ...

*In re Terry,* 630 F.2d 634, 635 (8th Cir. 1980), quoting, 9 Collier on Bankruptcy ¶ 9.2 at 319 (14th ed. 1978).

The courts are split on the issue of what constitutes good faith in filing bankruptcy actions; good faith, however, must be determined on an *ad hoc* basis. *In re Rimgale,* 669 F.2d 426, 431 (7th Cir.1982). *In re Goeb,* 675 F.2d 1386, 1390 (9th Cir. 1982). Also, "[c]ourts should *never* presume a lack of good faith." *In re Thacker,* 6 B.R. 861, 865 (Bankr.W.D.Va.1980) (Emphasis supplied). Rather, "[t]he approach must and should be a flexible one." *In re Bellgraph,* 4 B.R. 421, 432 (Bankr. W.D.N.Y.1980). Finally, in finding a lack of good faith, the courts have "emphasized an intent to abuse the judicial process." *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.),* 749 F.2d 670, 674 (11th Cir.1984).

With these propositions in mind, the Eleventh Circuit has attempted to extract order out of chaos by adopting a list of factors to be considered by bankruptcy courts in their determinations of debtors' good faith in cases under Chapter 13. *Kitchens v. Georgia R.R. Bank and Trust Co. (In re Kitchens),* 702 F.2d 885, 888–89 (11th Cir.1983). These factors, by no means exhaustive, are:

(1) The amount of the debtor's income from all sources;

(2) The living expenses of the debtor and his dependents;

(3) The amount of attorney's fees;

(4) The probable or expected duration of the debtor's Chapter 13 plan;

(5) The motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13;

(6) The debtor's degree of effort;

(7) The debtor's ability to earn and the likelihood of fluctuation in his earnings;

(8) Special circumstances such as inordinate medical expenses;

(9) The frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessors;

(10) The circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack

of same, in dealings with his creditors;

(11) The burden which the plan's administration would place on the trustee.

Additionally, *Kitchens* also held that "other factors or exceptional circumstances may support a finding of good faith." *Id.* at 889. Other courts have likewise adopted this hardship factor. *See In re Garsal Realty, Inc.*, 98 B.R. 140, 150 (Bankr. N.D.N.Y.1989), holding that a *bona fide* change in circumstances of the debtor should be considered.

■ Applying *Kitchens* to the case at bar yields the following: (1) The debtor is a seventy-nine-year-old (79) man. His total net income per month is $1305.00, which is primarily from Social Security. (2) The living expenses of the debtor are $728.00 per month. The debtor's expenses are primarily for medicines (the debtor suffers numerous maladies), food, and clothing. (3) The attorney's fees paid by the debtor are $1380.00, not an unreasonable sum. (4) The debtor submitted that his plan would continue for approximately thirty-six (36) months. This is a realistic time frame in which to satisfy creditors and still keep the home. Moreover, the debtor has pledged to commence regular payments to FHA and to pay $6000.00 in arrears. The debtor has also conformed to all of the requirements for a Chapter 13 plan. (5) The debtor's motivation in seeking relief is to avoid the Judgment of Foreclosure on his residence. This is not *per se* an improper filing of a Chapter 13 plan. (Discussed *infra*). The debtor's primary motivation is to protect his house. (6) The debtor's degree of effort, however, has been more questionable. The debtor breached his mortgage contract; was delinquent in his mortgage payments; and did not, throughout the term of the agreement, maintain insurance on his home. The debtor, however, has made laudable attempts to cure his breach. The debtor has made his mortgage payments for April, May, and June of this year to the FHA and has likewise made payments under the plan. Also, the debtor has insured the property as promised. The debtor has also made arrangements for his daughter to manage his mon-

ey for him, thereby hopefully relieving any past financial irresponsibility. The debtor's daughter testified at the hearing on this motion that she would not permit the debtor to fall into arrears again. Thus, the debtor has made a concerted effort to remedy his past financial mismanagement. (7) The debtor's financial condition is not likely to fluctuate. The debtor's primary source of income is from Social Security, which is a fixed amount. (8) The debtor falls squarely within the "exceptional circumstances" articulated by *Kitchens*. The debtor is elderly and has no other assets other than the property in question. The debtor also suffers poor health. Indeed, on the day of the hearing, the debtor, allegedly, was in a hospital emergency room seeking treatment for chest pains. (9) The debtor has not filed multiple bankruptcy actions; this is the debtor's only bankruptcy petition. (10) The debtor has not fallen into debt because of extravagance; rather, the debtor has incurred his debt in an attempt to purchase a principal residence. Also, by making his mortgage payments for April, May, and June of 1991 and by purchasing insurance for the house, the debtor has demonstrated a genuine desire to deal fairly with his creditors. (11) Finally, the burden placed on the Trustee in this matter would not be so grave as to work a hardship.

In a case strikingly similar to the present action, the "exceptional circumstances" of *Kitchens* are amply demonstrated. In *In re Bellgraph*, 4 B.R. 421 (Bankr. W.D.N.Y.1980), the debtor was a 56 year-old mother of seven, who suffered from emphysema and a nervous condition. *Id.* at 422. The debtor had difficulty managing her money, and foreclosure proceedings were instituted against her. *Id.* The debtor filed a bankruptcy petition to inhibit the foreclosure and prayed that the court have mercy. Additionally, the debtor requested that her eldest child assume the management of her financial affairs. *Id.* The creditors alleged bad faith, claiming bankruptcy was filed merely to prevent the foreclosure. The court, however, ruled that "debtors like the one in the case at bar

are a different matter" and that this case clearly presented "exceptional circumstances." *Id.* at 432. Accordingly, the court held that the bankruptcy petition, although filed to prevent the foreclosure, was not filed in bad faith.

As in *Bellgraph*, the Motion to Lift Stay in the present case should likewise be denied. The debtor in *Bellgraph* and the debtor in the present case have virtually identical conditions: both are elderly; both suffer poor physical health; both experience difficulty in managing their money; both have permitted their eldest child to assume management of their financial affairs; and both filed Chapter 13 plans in the wake of foreclosure. *Bellgraph* is directly applicable to the case at bar. Given that the *Bellgraph* debtor exercised good faith, a similar finding is warranted as to King.

The timing and the motive of the present case present a more delicate analysis. The bankruptcy court must carefully scrutinize a Chapter 13 plan which is filed immediately prior to a foreclosure sale or is a successively-filed bankruptcy petition. In some cases, courts have held that bankruptcy petitions filed immediately prior to a foreclosure sale constitute bad faith. *See In re Poston*, 78 B.R. 308 (Bankr.N.D.Fla.1987); *In re McKissie*, 103 B.R. 189 (Bankr. N.D.Ill.1989). However, it has been widely held that:

> [M]erely filing a bankruptcy petition to stop foreclosure is not in itself evidence of bad faith so as to preclude confirmation of a debt-adjustment plan. 'Indeed, the bottom line of most Chapter 13 cases is to preserve and avoid foreclosure of the family house.'

*In re Vivado*, 94 B.R. 785, 787 (Bankr. D.Dist.Col.1989), quoting, *In re Thacker*, 6 B.R. 861, 865 (Bankr.W.D.Va.1980). *See also Grimes v. United States (In re Grimes)*, 117 B.R. 531 (9th Cir.BAP 1990).

In the instant case, the debtor filed his Chapter 13 plan the day before the foreclosure; but this is not bad faith *per se.* The debtor has submitted a proposal in which he plans to satisfy his mortgage payments to the FHA. Moreover, the debtor has made his payments for April, May, and June of 1991. Also, the debtor has agreed to permit his daughter to handle his financial affairs to prevent future arrears. The very reason the debtor filed his bankruptcy petition is to preserve his residence. The Court finds that the debtor would suffer an extreme hardship if his property were subject to a foreclosure sale.

Before leaving the issue of good faith, the Court is obliged to discuss *In re Poston*, which the United States contends is applicable to the present case. *Poston*, however, is factually distinguished from the present action and therefore does not apply.

*In re Poston*, an opinion delivered by this Court, is distinguished from the present action. The *Poston* debtor filed a Chapter 13 plan the same day that a foreclosure sale of the mortgaged property was to be sold. The debtor, however, did not file her plan with the petition. Consequently, the court ordered the debtor to show cause why the case should not be dismissed for failure to file a plan within the time prescribed by Bankruptcy Rule 3015. The debtor eventually filed a plan, but it proposed nothing more than to attempt to sell the property. Moreover, the plan was defective in other respects: there were no unsecured debts listed; the debtor proposed to leave the other secured creditors unaffected; the plan did not provide for any payments from future earnings; it did not provide for payments to the mortgagee prior to the sale; it did not provide for making current payments during the pendency of the case; nor did it make a statement of future earnings or trustee supervision. Thus, the plan violated 11 U.S.C. § 1322. *Id.* at 308–09. Moreover, the property in *Poston* was *non-residential* real estate. Unlike the *Poston* debtor, the present debtor filed a reasonable and complete Chapter 13 plan; also, the plan was filed with the bankruptcy petition. Finally, the property in the case at bar is residential: King lives in the house; it is his sole abode, whereas the *Poston* property was for non-residential purposes. The Court finds this to be a major distinction.

## IV. *The Mortgage*

■ The Court now turns to the issue of the bankruptcy petition's effect upon the mortgage. The issue is whether a Chapter 13 plan may be used solely to permit a debtor to reinstate a delinquent mortgage. The law in this circuit is clear and was recently delivered in *Jim Walter Homes, Inc. v. Saylors (In re Saylors)*, 869 F.2d 1434 (11th Cir.1989).

In *Saylors*, the debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code on March 20, 1987. One of the debts was a $65,000.00 mortgage to the creditor, the debt secured by the property. *Id.* at 1435. This debt was discharged in bankruptcy; but on December 30, 1987, the debtors filed a Chapter 13 petition, with the sole debt being a $2,676.50 arrearage on the mortgage debt. The plan proposed that the debtor, through his Chapter 13 trustee, would pay the mortgagee $83.00 per month until the arrearage was satisfied. Additionally, the debtor was to make his regular mortgage payments directly to the mortgagee. *Id.* The bankruptcy court confirmed the plan; but, on appeal by the mortgagee, the district court reversed. *Id.* The mortgagee argued that, as a matter of law, a Chapter 13 plan may not cure a home mortgage arrearage when the debtor has received a Chapter 7 discharge of the underlying mortgage debt.

The Eleventh Circuit, however, rejected this reasoning and held that a Chapter 13 plan could cure a home mortgage arrearage. *Id.* at 1436. The court held that filing a Chapter 13 plan solely to reinstate a mortgage was not an abuse of the bankruptcy law, provided that the plan was proposed in good faith and that it conformed to all other requirements of a Chapter 13 proposal:

[A] *per se* rule that bars an entire category of debtors from using this procedure [the Chapter 13 plan to reinstate a mortgage] is not warranted. The good faith requirement of 11 U.S.C. § 1325(a)(3) is sufficient to prevent *undeserving* debtors from using this procedure, yet it does not also prevent *deserv-*

*ing* debtors from using the procedure. (Emphasis in original).

*Id.* The court further rejected the contention that the debtor's filing his Chapter 13 petition the day after the bankruptcy court lifted the automatic stay in the Chapter 7 case was dispositive on the issue of good faith, as the mortgagee claimed. *Id.* at 1438. The Eleventh Circuit also noted that the bankruptcy court is in the best position to evaluate the factors concerning a debtor's good faith. *Id.* Finally, the court ruled that the debtor could cure the mortgage arrearage through his Chapter 13 plan "only if he also keeps his regular mortgage payments current." *Id.* at 1439. Thus, strict adherence to the plan is required by the debtor.

*Saylors* is directly applicable to the instant case. Since the debtors in those cases were permitted to reinstate the mortgage solely through a Chapter 13 plan, the Court holds that King may do likewise. Applying *Saylors* to case at bar, the motion to lift stay denied. Clearly, Chapter 13 may be used to reinstate a mortgage. Furthermore, this procedure is particularly applicable to a "deserving debtor" as the *Saylors* court noted. Since the debtor has submitted an acceptable Chapter 13 plan and has made payments under the plan and to the FHA, the Court denies the Motion to Lift Stay.

The Supreme Court recently adopted the reasoning of *Saylors*. *See Johnson v. Home State Bank of Lewis*, 498 U.S. ——, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). In *Johnson*, the Court held that a Chapter 13 plan could be used to reinstate a delinquent mortgage. 498 U.S. at ——, 111 S.Ct. at 2151–53. Rejecting the creditor's contention that the holding would lead to serial filings, abuse of bankruptcy law, and lack of security for creditors, the Court ruled that Chapter 13 creditors are protected by other Bankruptcy Code provisions, namely that of good faith. *Id.* Indeed, concluding that the question of good faith was of paramount importance in adjudicating the case, the Court remanded the cause for a determination on the issue of good faith because the district court and the court of appeals disposed of the action on the

ground that the mortgage interest was not a "claim" subject to inclusion in a Chapter 13 plan, no good faith determination being made. *Id.*

### V. *Conclusion*

For the foregoing reasons, the United States' motion is hereby DENIED. Continuation of the stay is conditioned upon the debtor's making all payments to FHA and to the Chapter 13 trustee on a timely basis. Payments to FHA shall be made directly to the county supervisor or as FHA otherwise may direct by written instruction. Upon any failure of the debtor to make payments as required hereunder, FHA shall be entitled, upon presentation of an affidavit of default, to an order granting to it relief from the stay.

DONE AND ORDERED.