In re Paul Wayne SAYLORS, Debtor.

**JIM WALTER HOMES, INC.,**
**Plaintiff–Appellee,**

*v.*

**Paul Wayne SAYLORS,**
**Defendant–Appellant.**

**Jane K. Dishuck, Standing**
**Trustee, Defendant.**

No. 88–7320.

United States Court of Appeals,
Eleventh Circuit.

April 10, 1989.

Claude M. Burns, Jr., Tuscaloosa, Ala., for defendant-appellant.

E. Terry Brown, Copeland, Franco, Screws & Gill, P.A., Montgomery, Ala., for plaintiff-appellee.

Before VANCE and EDMONDSON, Circuit Judges, and ATKINS *, District Judge.

VANCE, Circuit Judge:

Paul Wayne Saylors appeals from the decision of the district court reversing the confirmation of Saylors' chapter 13 plan. We reverse.

## I. BACKGROUND

On May 20, 1987, Saylors and his wife filed a voluntary petition under chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 101–1330. The petition listed, among other debts, $65,000 owed to Jim Walter Homes, Inc. ("Jim Walter").[1] A first mortgage on the Saylors' home secured this debt. On August 25, 1987, the bankruptcy court discharged the debts listed in the petition. Jim Walter thereafter moved for relief from the automatic stay. The bankruptcy court granted the motion on December 29, 1987. On January 6, 1988, the chapter 7 trustee filed his final report and abandoned all interest in the Saylors' property.

On December 30, 1987, Mr. Saylors filed a chapter 13 petition. The sole debt from which he sought relief was a $2,676.50 arrearage on his mortgage debt to Jim Walter. Over Jim Walter's objection, the bankruptcy court confirmed Saylors' chapter 13 plan on January 26, 1988. The plan provides that Saylors, through the chapter 13 trustee, is to pay Jim Walter $83 per month until the mortgage arrearage is satisfied and is to pay his regular monthly mortgage payments directly to Jim Walter. Jim Walter appealed and the district court reversed. This appeal followed.

## II. DISCUSSION

### A.

◼ Jim Walter contends that the district court's decision must be affirmed be-

---

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

1. The chapter 7 petition listed the debt as owed to Mid-State Homes, an entity that serviced Jim Walter's mortgages. The bankruptcy court confirmed this relationship at page 2 of its opinion and found that the debt was due to Jim Walter, not Mid-State.

cause, as a matter of law, a chapter 13 plan may not cure a home mortgage arrearage when the debtor has received a chapter 7 discharge of the underlying mortgage debt. Several bankruptcy courts have adopted this view. *E.g., In re McKinstry,* 56 B.R. 191 (Bankr.D.Vt.1986); *In re Binford,* 53 B.R. 307 (Bankr.W.D.Ky.1985); *In re Brown,* 52 B.R. 6 (Bankr.S.D.Ohio 1985); *Manufacturer's Hanover Mortgage Corp. v. Fryer (In re Fryer),* 47 B.R. 180 (Bankr. S.D.Ohio 1985). One circuit court, however, reached the opposite conclusion in *Downey Sav. and Loan Ass'n v. Metz (In re Metz),* 820 F.2d 1495 (9th Cir.1987). We follow the Ninth Circuit precedent and therefore reject Jim Walter's contention.

In reaching its conclusion, the *Metz* court relied principally on the rationale of *In re Lagasse,* 66 B.R. 41 (Bankr.D.Conn.1986). *Metz,* 820 F.2d at 1497–98. *Lagasse* reasoned that an arrearage on a home mortgage debt that has been discharged in a chapter 7 case may be cured in a subsequent chapter 13 plan because (1) the debt owed by the mortgagor to the mortgagee is transformed into a nonrecourse obligation at the time of the chapter 7 discharge and (2) a nonrecourse debt may be cured in a chapter 13 plan. *Lagasse,* 66 B.R. at 43. As to the latter conclusion, *Lagasse's* analysis is persuasive without further elaboration on our part:

> I perceive no reason why curing of a nonrecourse debt may not be included in a chapter 13 plan. The clear language of [11 U.S.C.] §§ 102(2) and (4), and § 1322(b)(5) does not forbid it, and the legislative history of § 102(2) supports it. Paragraph (2) specifies that 'claim against the debtor' includes claim against property of the debtor. This paragraph is intended to cover nonrecourse loan agreements where the creditor's only rights are against property of the debtor, and not against the debtor personally....

*Id.* (citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 315, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6272).

We also agree that a home mortgage debt is transformed into a nonrecourse obli-gation when the debt is discharged in a chapter 7 case, at least when the debtor's home is located in Alabama. Although the mortgagor is no longer personally liable for the debt, *see* 11 U.S.C. § 524(a)(1), he still has two valuable property rights under Alabama law that provide him with the ability to save his home by paying off the mortgage debt. He has the equitable right of redemption until a foreclosure sale takes place, *Trauner v. Lowrey,* 369 So.2d 531, 534 (Ala.1979), and the statutory right of redemption for one year after a foreclosure sale takes place, Ala.Code § 6–5–230 (1975).

Neither of these rights vanishes upon the mortgagor's receipt of a chapter 7 discharge. Under 11 U.S.C. § 524 (the effect of discharge provision of the Code), the rights of creditors are modified upon the debtor's receipt of a discharge. Nothing in that section, however, modifies the rights of the debtor upon the receipt of a discharge.

Congress enacted chapter 13 to "provide[ ] a highly desirable method for dealing with the financial difficulties of individuals. It creates an equitable and feasible way for the honest and conscientious debtor to pay off his debts rather than having them discharged in bankruptcy." H.R.Rep. No. 193, 86th Cong., 1st Sess. 2 (1959), *quoted in Perry v. Commerce Loan Co.,* 383 U.S. 392, 396, 86 S.Ct. 852, 855, 15 L.Ed.2d 827 (1966). In the absence of statutory language or legislative history indicating that Congress intended otherwise, a *per se* rule that bars an entire category of debtors from using this procedure is not warranted. The good faith requirement of 11 U.S.C. § 1325(a)(3) is sufficient to prevent *undeserving* debtors from using this procedure, yet does not also prevent *deserving* debtors from using the procedure.

**B.**

The district court held that the bankruptcy court had no jurisdiction over Saylors' home. We disagree. The jurisdiction of the bankruptcy court derives from that of the district court, *see* 28 U.S.C. § 157(a)–(b)(1), which has exclusive jurisdiction over "all of the property, wherever

located, of the debtor as of the commencement of [the] case, and of property of the estate." *Id.* § 1334(d). With certain exceptions not applicable here, the property of the debtor's estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The district court concluded that the bankruptcy court lacked jurisdiction by reasoning as follows:

> Saylors had no true "possessory" or "equitable" interest in his residence at the time his Chapter 13 petition was confirmed on January 26, 1988. Any and all interest by Saylors, except his Alabama statutory right to redeem after foreclosure, ceased to exist upon the granting of Jim Walter's right to foreclose on December 29, 1987. And, if any "possessory interest" did remain, it surely disappeared on January 6, 1988, when the Chapter 7 trustee formally abandoned the property.... Whatever "possession" of the residence Saylors had on January 6, 1988, was held *constructively* by his trustee, and upon abandonment, *evaporated.*

(emphasis in original).

Contrary to the district court's conclusion Saylors still had an equitable interest in his home on January 26, 1988 that was subject to the bankruptcy court's jurisdiction. The lifting of the automatic stay only gave Jim Walter the right to foreclose; because no foreclosure sale had taken place by January 26, 1988, Saylors still had his equitable right of redemption on that date. Although Jim Walter was prevented from foreclosing by the filing of the chapter 13 petition on December 30, 1987, *see* 11 U.S.C. § 362(a)(5), Saylors would have had the statutory right of redemption even if a foreclosure sale had taken place. Either of these property rights is sufficient to give the bankruptcy court jurisdiction over a debtor's home. The Alabama statutory right of redemption is a property right of the debtor within the jurisdiction of the

bankruptcy court. *Wragg v. Federal Land Bank of New Orleans,* 317 U.S. 325, 329, 63 S.Ct. 273, 275, 87 L.Ed. 300 (1943). The Alabama equitable right of redemption is more valuable than the statutory right of redemption, *Federal Deposit Ins. Corp. v. Morrison,* 747 F.2d 610, 613 (11th Cir. 1984), *cert. denied,* 474 U.S. 1019, 106 S.Ct. 568, 88 L.Ed.2d 553 (1985), and therefore also is a property right of the debtor within the jurisdiction of the bankruptcy court.[2]

### C.

■ The district court also concluded that, as a matter of law, Saylors did not propose his chapter 13 plan in good faith. Two factors had a significant influence on the court in reaching this decision. The first was that Saylors filed his chapter 13 petition before the chapter 7 trustee filed his final report. This factor, however, is not dispositive on the issue of good faith. If it were, a debtor effectively would be barred as a matter of law from filing a chapter 13 petition during the period between the debtor's receipt of a chapter 7 discharge and the filing of the final report by the chapter 7 trustee. The language of the Bankruptcy Code suggests no such rule. The Code provides that the "court *shall* confirm a [chapter 13] plan" if the debtor meets certain conditions. 11 U.S.C. § 1325(a). The receipt of a prior chapter 7 discharge does not prevent the debtor from meeting any of the listed conditions. *See* § 1325(a)(1)–(6).

A *per se* rule barring the filing of a chapter 13 petition during the period at issue also would conflict with the purpose of Congress in adopting and designing chapter 13 plans. In *Perry v. Commerce Loan Co.,* 383 U.S. 392, 86 S.Ct. 852, 15 L.Ed.2d 827 (1966), the Supreme Court held that the statutory provision barring a debtor from receiving a chapter 7 discharge within the first six years following the receipt of another discharge in bankrupt-

---

**2.** Saylors' equitable and statutory rights of redemption also did not evaporate on January 6, 1988, as suggested by the district court. Upon

abandonment, the interest held constructively by the chapter 7 trustee reverted to the Saylors. 11 U.S.C. § 554(c).

cy [3] does not apply to a chapter 13 petition filed after the receipt of a bankruptcy discharge. The Court reasoned that the application of the six-year bar to chapter 13 plans would prevent deserving debtors from utilizing the plans and thereby collide with the purpose of Congress in adopting and designing these plans. *Id.* at 399 and n. 6, 86 S.Ct. at 857 and n. 6. We similarly are convinced that barring a debtor, as a matter of law, from filing a chapter 13 petition during the period at issue would collide with the purpose of Congress in adopting and designing chapter 13 plans. A chapter 7 trustee has the duty to "close the estate as expeditiously as is compatible with the best interests of parties in interest." 11 U.S.C. § 704(1). As a practical matter, however, the trustee often cannot fully close the estate until a considerable time has elapsed since the chapter 7 discharge. A rule barring all debtors from taking advantage of chapter 13 during this period could defeat Congress's intent to the same extent as would a flat six-year prohibition.

The other factor that influenced the district court was that Saylors filed his chapter 13 petition the day after the bankruptcy court lifted the automatic stay in the chapter 7 case on December 29, 1987. Jim Walter in effect argues that this factor also is dispositive on the issue of good faith because the lifting of the automatic stay in the chapter 7 case was a final adjudication of Jim Walter's right to foreclose and, under the doctrines of res judicata and collateral estoppel, Saylors can no longer question this adjudication. This argument has no merit. The bankruptcy court's order of December 29 merely lifted the automatic stay in the chapter 7 case. In no way did the order purport to be a permanent adjudication of Jim Walter's right to foreclose. The order also cannot be construed as lifting the stay in the chapter 13 case that automatically became effective the next day. The property of Saylors' chapter 13 estate is distinct from the property of the chapter 7 estate that preceded it. *Com-*

*pare* 11 U.S.C. § 1306 (property of chapter 13 estate) *with* 11 U.S.C. § 541 (property of bankruptcy estate). Consequently, each stay also is distinct. *See, e.g.,* 11 U.S.C. § 362(a)(2)–(5) (automatic stay protections on property of estate).

A bankruptcy court's determination whether a chapter 13 plan has been proposed in good faith is a finding of fact reviewable under the clearly erroneous standard. *Downey Sav. and Loan Ass'n v. Metz (In re Metz),* 820 F.2d 1495, 1497 (9th Cir.1987); *Public Finance Corp. v. Freeman,* 712 F.2d 219, 221 (5th Cir.1983). In *In re Kitchens,* 702 F.2d 885, 888–89 (11th Cir.1983), we enumerated a nonexclusive list of factors that a bankruptcy court should consider in making a determination of good faith. In the present case, the bankruptcy court expressly stated that it considered these factors in determining that Saylors proposed his plan in good faith. The court found that at least one of the factors favoring a conclusion of good faith was present—Saylors' monthly income had increased $283 between the filing of his chapter 7 petition and the filing of his chapter 13 petition. While the two factors noted by the district court also were of concern, their appropriate weight largely depended on the credibility of the debtor. The bankruptcy court was in the best position to judge this credibility. The record does not support a holding that the bankruptcy court's finding was clearly erroneous.

### D.

The extension plan that Saylors filed with the bankruptcy court proposed to pay Jim Walter $83 per month until the mortgage arrearage is satisfied. The bankruptcy court's confirmation order incorporated this proposal, but added a requirement not suggested by Saylors: "THE REGULAR MONTHLY PAYMENT TO JIM WALTER HOMES IS TO BE PAID DIRECT BY DEBTOR TO CREDITOR...." (capitali-

---

**3.** Section 14(c)(5) of the Bankruptcy Act, 52 Stat. 930 (1938) (now codified at 11 U.S.C. § 727(a)(8)–(9)).

zation in original). The district court expressed concern with this provision because 11 U.S.C. § 1322(c) states that a chapter 13 plan "may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years." Obviously, it will take Saylors several years to pay off the entire mortgage debt at the regular monthly rate. We interpret the provision at issue, however, simply as the bankruptcy court's effort to ensure that Jim Walter is treated fairly by the confirmed plan; Saylors can cure the mortgage arrearage through a chapter 13 extension plan only if he also keeps his regular mortgage payments current. Consequently, the confirmed plan's requirement that Saylors must make his regular monthly mortgage payments terminates when the arrearage is satisfied.[4]

## III. CONCLUSION

The decision of the district court is reversed and the order of the bankruptcy court confirming Saylors' chapter 13 plan is reinstated.

REVERSED.

---

**4.** This statement, of course, only applies to what is required of Saylors by the confirmation order of the bankruptcy court. If all goes well and Saylors satisfies the arrearage while maintaining his monthly mortgage payments, he probably will find himself in the position of any non-bankrupt nonrecourse debtor. He will be required by state law to continue making his mortgage payments until the entire debt is satisfied or risk losing his home.