**In the Matter of Santos SAMARRIPPAS, Sr., d/b/a Samarrippas Harvesting, Debtor.**

**Bankruptcy No. 89–336–8B3.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Nov. 6, 1989.

Thomas Joel Chawk, Lakeland, Fla., for debtor.

Chris Larimore, Bradenton, Fla., Trustee.

## ORDER ON CONFIRMATION

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THIS MATTER came on for consideration upon Debtor, Santos Samarrippas, Sr. d/b/a Samarrippas Harvesting's hearing on confirmation of his Second Amended Chapter 13 Plan. The Court reviewed the record, heard argument of counsel, and finds the relevant facts to be as follows:

On August 3, 1988, Debtor voluntarily filed for relief under Chapter 7 of the Bankruptcy Code. The Chapter 7 Trustee filed a report of no distribution and on November 9, 1988 Debtor received a discharge from bankruptcy.[1] Before the case was closed, Debtor filed for relief under Chapter 13 of the Bankruptcy Code on June 23, 1989. Debtor listed the same three secured creditors holding claims on the Debtor's home and cars as listed on the

---

1. Trustee found no property of the estate available for distribution to creditors either because the property is exempt or because the property is of minimal value or has no equity due to liens on it. The debts of twelve unsecured creditors without priority holding claims in the amount of $12,825.19 were discharged.

Chapter 7 Schedule A–2.[2] Also listed were tax claims that were not discharged in the Chapter 7 bankruptcy pursuant to 11 U.S.C. § 523(a)(1). Debtor listed a new secured creditor and new unsecured creditors without priority which appear subsequent to the Chapter 7 case. However, none of these unsecured creditors filed a proof of claim.

At the confirmation hearing on June 29, 1989, the Chapter 13 Trustee recommended to the Court that Debtor's Chapter 13 Plan should be denied confirmation because "this case immediately follows a filing under Chapter 7 of the Bankruptcy Code in which the Debtor received his discharge and the debts being dealt with under this Plan are the same. This appears to be a classic Chapter 20 as to which the Trustee is unable to make a favorable recommendation."

## DISCUSSION

The courts are split on the issue of whether a debtor may have a Chapter 13 case pending simultaneously with a Chapter 7 case. This Court previously ruled on this issue in the case, *In re Fulks*, 93 B.R. 274 (Bankr.M.D.Fla.1988) and took the majority view that debtors could not simultaneously maintain Chapter 7 and Chapter 13 proceedings after receiving a discharge in the Chapter 7 case. One consideration was the potential abuse of the bankruptcy system by having two cases pending at the same time. *Id.* at 276. However, this Court did not intend an absolute prohibition to simultaneous Chapter 7 and 13 cases. Confirmation of the Chapter 13 plan before the close of the Chapter 7 case depends on many factors.

In the case, *In re Ross*, 95 B.R. 509 (Bankr.S.D.Ohio 1988) the court provided a few factors for courts to consider when analyzing "Chapter 20 cases" including

the nature of the obligations proposed to be treated in the Chapter 13, the length of time between the filings, and the foreseeability of the circumstances which arose after the Chapter 7 which prompted the Chapter 13 filing. In this regard, the two petitions must be considered together and the functional effect, or the percentage of repayment, based upon the treatment of creditors as if the two cases were one.

*Id.* at 510 *citing In re Sardella*, 8 B.R. 401 (Bankr.S.D.Ohio 1981).[3]

After the *Fulks* decision, the 11th Circuit Court of Appeals in *Jim Walter Homes, Inc. v. Saylors (In re Saylors)*, 869 F.2d 1434 (11th Cir.1989) allowed the confirmation of a debtor's plan after he received a discharge from his Chapter 7 case but before the case was closed. The sole debt provided for in the Chapter 13 plan was a $2,676.50 arrearage on a mortgage which was previously listed in the Chapter 7 case. The bankruptcy court had confirmed the Chapter 13 plan but the district court reversed. The district court concluded the debtor did not propose the Chapter 13 plan in good faith because 1) it was filed before the Chapter 7 case was closed and 2) the debtor filed the Chapter 13 plan the day after the bankruptcy court lifted the automatic stay in the Chapter 7 case.

The 11th Circuit disagreed with the district court and found a Chapter 7 discharge does not preclude a debtor from filing a Chapter 13. It also found the filing of the Chapter 13 the day after the bankruptcy

---

**2.** These Creditors include Avco Financial Services, Ford Motor Company and Jim Adams Ford. Jim Adams Ford's claim is being dealt with outside the plan since Debtor is current on his payments under their contract.

**3.** The court in *Jim Walter Homes, Inc. v. Saylors (In re Saylors)*, 869 F.2d 1434 (11th Cir.1989) used some of these factors in reaching its conclusion that the debtor was not prohibited from filing a Chapter 13 petition after receiving a discharge from his Chapter 7 case but before the case was closed. *Id.* at 1437–38. The court focused on 1) the nature of the obligation pro-

posed in the Chapter 13 and 2) the change of circumstance between the filing of the Chapter 7 petition and the Chapter 13 petition. *See* discussion in text.

In *Ross, supra*, the court denied confirmation of the debtor's Chapter 13 plan because the main purpose of the plan was to repay an obligation secured by a lien which was not discharged in a recent Chapter 7 case. The court made many references to the fact the Chapter 7 discharge and Chapter 13 petition were so close in time to one another.

court lifted the automatic stay in the initial Chapter 7 was not a meritorious basis for denying confirmation.[4] *Id.* at 1438. The 11th Circuit reversed the district court's decision.

The 11th Circuit focused on two factors in allowing the Chapter 13 case: 1) the nature of the obligation proposed in the Chapter 13 plan and 2) the change of circumstances between the filing of the Chapter 7 petition and the Chapter 13 petition. The nature of the obligation was a mortgage on the debtor's home. The Court held the Chapter 13 plan may cure the arrearage on a home mortgage, even if the underlying debt was discharged in the prior Chapter 7 case. *In The Matter of Lagasse,* 66 B.R. 41 (Bankr.D.Conn.1986). The debt owed by the mortgagor to mortgagee becomes a non-recourse obligation which may be cured by a Chapter 13 plan because the debtor did not lose its equitable or statutory right of redemption by the discharge.

The other factor relied on by the Court was the change of circumstances between the filing of the Chapter 7 and 13 petitions. The debtor's monthly income increased $283.00 between the filing of the two petitions. This factor favored a conclusion of good faith. Therefore, the Court confirmed the Chapter 13 plan.

While this Court agrees with the reasoning in the *Saylors* decision, it finds "Chapter 20 cases" warrant a more indepth analysis; otherwise the *Fulks* policy should endure. This Court's focus is directed to the intent of the debtor in filing two bankruptcy petitions and the fairness of such practice upon the unsecured creditors whose claims are discharged in the Chapter 7 proceeding.

As the *Ross* court concluded, both bankruptcy cases should be should be considered together when making the analysis. *Supra* at 510. The major policy position when confirming a Chapter 13 plan is whether the debtor proposed the plan in good faith pursuant to 11 U.S.C. § 1325(a)(3). The other side of the policy is whether the filing of the Chapter 7 petition constituted substantial abuse under 11 U.S.C. § 707(b). Courts have surmised that in seeking to curb substantial abuse, Congress meant to deny Chapter 7 relief to the non-needy or dishonest debtor. *In re Krohn,* 886 F.2d 123 (6th Cir.1989) *citing In re Walton* 866 F.2d 981, 983 (8th Cir. 1988). Thus, one factor in determining "needy" is whether the debtor has the ability to repay his debts out of future earnings. *Id.* ". . . if a debtor can meet his debts without difficulty as they come due, use of Chapter 7 would represent a substantial abuse. (S.Rep. No. 65, 98th Cong, 1st Sess 43 (1983) (Senate Report accompanying § 445, Omnibus Bankruptcy Improvements Act of 1983, which was a forerunner to the Bankr Amend Act of 1984))." Thus, this Court concludes if the filing of the initial Chapter 7 case would have constituted a substantial abuse under 11 U.S.C. § 707(b), then the debtor obviously did not act in good faith when filing the Chapter 13 petition and proposing the plan, thus, the Chapter 13 confirmation should be denied.

■ Courts must insure debtors do not use the initial Chapter 7 discharge as a method of creating a zero payment to the unsecured in the subsequent Chapter 13 plan. If such a plan were allowed, then debtors would be preserving their exempt or personal assets and preferring secured creditors at the expense of the unsecured. Under such circumstances, 11 U.S.C. § 1325(b) would become effectively repealed. Therefore, the ultimate policy criteria is a three-tier standard: 1) debtors should not be able to use Chapter 7 relief where debtors have the ability to pay creditors through a Chapter 13 plan. *In re Andrus,* 94 B.R. 76 (Bankr.W.D.Pa.1988); *Zolg v. Kelly (In re Kelly),* 841 F.2d 908 (9th Cir.1987); 11 U.S.C. § 707(b); 2) debtors should be able to use a subsequent

---

**4.** Under 11 U.S.C. § 109(g)(2), an individual may not be a debtor under Title 11 if he was a debtor in the preceding 180 days and obtained a voluntary dismissal of the bankruptcy case which followed the filing for relief from the automatic stay. The Court did not mention this provision. The debtor did not obtain a voluntary dismissal of the initial Chapter 7 case when he filed for Chapter 13. Thus, 11 U.S.C. § 109(g)(2) was not applicable.

Chapter 13 case where there has been a change in circumstances from the previous Chapter 7; and 3) the nature of the obligations proposed in the Chapter 13 plan should be examined. For example, was the nature of the obligation incapable of being dealt with in the Chapter 7 case, or was the obligation a new luxury which the debtor acquired between the filing of the two petitions?

■ In applying this criteria to the present facts, the Court finds the Debtor could not have been able to pay a reasonable amount to his unsecured creditors in a Chapter 13 plan when he filed for Chapter 7 relief. In Debtor's Chapter 7 Schedule of Current Income and Current Expenditures, he listed his monthly income as $748.00 and his expenses in the sum of $1,866.14. Since Debtor's expenses exceeded his income by over $1,000.00, he obviously did not have any sufficient income to fund a Chapter 13 plan. Thus, his unsecured creditors would have received no more money on their claims under a Chapter 13 plan than they received in the Chapter 7. In addition, although Debtor trimmed his expenses down to $981.50 in his Chapter 13 Statement, and using these expenses as the basis when he filed for Chapter 7 relief, the Court finds Debtor still would not have been able to fund a Chapter 13 plan in 1988 because his expenses still exceeded his income. Therefore, the Court finds Debtor's filing of a Chapter 7 instead of a Chapter 13 case was warranted and did not constitute substantial abuse under 11 U.S.C. § 707(b).

The Court finds the substantial change of circumstances between the two filings warrants a conclusion of good faith on the Debtor's part. *See, In re Saylors, supra* at 1438. In the Chapter 13 Statement Debtor listed his monthly income as $1,600.00 and his expenses as $981.50. Thus, his income increased by $852.00 a month and his expenses decreased by $884.64 since the filing of the Chapter 7 petition. Also, none of his expenses have been allocated to recreation or luxuries.[5] All are necessities. Debtor certainly can fund a Chapter 13 plan at the present time.

The nature of the obligation proposed to be dealt with in the Chapter 13 plan are Debtor's taxes, which were not discharged in the Chapter 7 case, arrearages on the mortgage payment on Debtor's home, arrearages on car payments, and arrearages on furniture payments. The mortgage and car debts were previously listed in the Chapter 7 case. Although the personal liability was discharged, these creditors retained their secured rights in the property. Thus, under these facts, Debtor could not be seeking to take advantage of his creditors by filing two bankruptcies. In fact, it

---

**5.** A comparison of Debtor's monthly income and expenses when he filed for Chapter 7 and Chapter 13 is as follows:

| Chapter 7 | | Chapter 13 | |
|---|---|---|---|
| Income $748.00 | | Income $1,600.00 | |
| Expenses | | Expenses | |
| Mortgage | 364.00 | Mortgage | 364.00 |
| Utilities | 217.00 | Utilities | 125.00 |
| Food | 200.00 | Food | 200.00 |
| Clothing | 100.00 | Clothing | 0.00 |
| Laundry & Cleaning | 25.00 | Laundry & Cleaning | 0.00 |
| Medical & Drug | 100.00 | Medical & Drug | 0.00 |
| Insurance | 92.50 | Insurance | 92.50 |
| Transportation | 200.00 | Transportation | 80.00 |
| Jim Adams Ford | 140.00 | Jim Adams Ford | 120.00 |
| Ford Motor Co. | 427.64 | Ford Motor Co. | paid through plan |
| Avco | See mortgage | Avco | See mortgage |
| Total | $1,866.14 | Total | $981.50 |

is to the creditors' advantage to keep Debtor in Chapter 13 because they will receive more on their claims.

Even if the Court dismisses the Chapter 13 case or reopens the initial Chapter 7, the unsecured creditors of the Chapter 7 case could not benefit because Debtor did not obtain substantial non exempt property between the filings, thus, the estate would still be a no-asset estate. Therefore, under the particular facts of this case, the Court allows Debtor to file simultaneous Chapter 7 and 13 cases and confirms Debtor's Plan.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Court overrules Trustee's recommendation that Debtor's Plan should be denied confirmation. It is further

ORDERED, ADJUDGED AND DECREED the Court confirms Debtor's Second Amended Chapter 13 Plan.

DONE AND ORDERED.