### In re MANDALAY SHORES COOPERATIVE HOUSING ASSOCIATION, INC., Debtor.

#### Bankruptcy No. 86–1183–8P1.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

March 2, 1990.

See also, Bkrtcy., 101 B.R. 320.

Jack Burr, Officer of debtor corp., Dunedin, Fla.

Langfred W. White, Clearwater, Fla., trustee.

Robert Eddy, Tampa, Fla., for creditors.

Cindy Burnette, Tampa, Fla., Asst. U.S. Trustee.

ORDER ON MOTION (OR PETITION) FOR VOLUNTARY WITHDRAWAL OR DISMISSAL OF PETITION FOR RELIEF VOLUNTARILY FILED UNDER CHAPTER 11 OF THE BANKRUPTCY CODE FOR THE PURPOSE OF TERMINATING CASE AND RENEWED MOTION TO DISMISS

ALEXANDER L. PASKAY, Chief Judge.

THIS is the third Chapter 11 case commenced by the Mandalay Shores Cooperative Housing Association, Inc. (MSCHA), and the matters under consideration are two Motions. The first is filed by MSCHA and is entitled "Motion (or Petition) for Voluntary Withdrawal or Dismissal of Petition for Relief Voluntarily Filed under Chapter 11 of the Bankruptcy Code for the Purpose of Terminating Case". The second is a Renewed Motion to Dismiss this Chapter 11 case filed by Elizabeth M. Cannon (Cannon) and Ralph Meyer (Meyer). The Motion filed by MSCHA presents a unique twist in that the Debtor who sought relief in the bankruptcy court three times under Chapter 11 now urges that its third Chapter 11 should be dismissed because it was filed in bad faith, because of the continuing loss or diminution of assets of the estate, and because of the total absence of the likelihood of rehabilitation. In addition, MSCHA also urges that it is unable to effectuate a plan of reorganization, there are delays which are prejudicial to the creditors, and the Chapter 11 should be dismissed because of the Debtor's failure to file a reorganization plan within the time fixed by the Court.

The Renewed Motion to Dismiss filed by Cannon and Meyer urges a dismissal on the basis that the second Chapter 11 case filed by MSCHA in the Northern District of Illinois was dismissed with prejudice. Accordingly, this third Chapter 11 case, *In re Mandalay Shores Co-op. Housing Ass'n, Inc.*, 63 B.R. 842 (M.D.Ill.1986), is a legal nullity and cannot be maintained by this Debtor, according to Cannon and Meyer.

In order to put the Motions under consideration in proper focus, it should be helpful to highlight both the problems which beset

MSCHA from the outset and the underlying cause for its inability to achieve rehabilitation. It should be noted that rehabilitation would have been nothing more than a disposition of the only asset of MSCHA, monies on deposit in an Illinois bank which were collected by MSCHA from MSCHA members. It should be also helpful to state the reasons why this Court permitted MSCHA to remain under the protective umbrella of this Court for so long, and the concern which prompted this Court to go to an extra length to allow MSCHA to initially maintain the first and then this third Chapter 11 case.

MSCHA is an association organized under Fla.Stat. § 617.01 as a non-profit corporation. MSCHA was formed by the tenants of an apartment complex known as Mandalay Shores. The complex, which is located in Clearwater Beach, Florida, was owned by Housing and Urban Development (HUD), an agency of the U.S. Government, when the first Chapter 11 case was filed.

The record reveals that MSCHA was originally formed for the singular purpose of acquiring Mandalay Shores from HUD to prevent HUD from selling the complex to a private entrepreneur who most likely would convert Mandalay Shores into a condominium operation. Specifically, the tenants, most of whom were senior citizens, were told by the MSCHA organizers that the sale by HUD to a private developer would result in the loss of their very advantageous leases, even if the complex was not converted into a condominium project. Inasmuch as most of the retiree-tenants were not in the financial position to either purchase a condominium unit in the event of conversion or to pay an increased rent, their fear was well-founded and understandable. Faced with these frightening prospects, it is not surprising that the tenants of Mandalay Shores were anxious to join forces at the urging of the promoters, who initially promised the tenants that their combined efforts and resources would assure the preservation of their tranquil life, free of fear of losing their well-established residences and free of anxiety over their future. Thus it is not surprising that the management of the newly formed organization, MSCHA, had no difficulty in collecting over $1 million from the tenants to achieve the announced goal of MSCHA.

Initially, it appeared that MSCHA might have been able to achieve its goal. However, in spite of the vigorous, albeit unsuccessful, attempts, first on an administrative level and then in the various courts, MSCHA never had a chance to succeed, simply because HUD refused to consider MSCHA as a qualified purchaser of Mandalay Shores.

As noted earlier, MSCHA collected over $1 million from its members. Each member paid approximately $3,200 and obtained a receipt evidencing the amounts paid. Some of the receipts stated that in the event MSCHA's attempts to purchase Mandalay Shores proved unsuccessful, members may request a refund of their contribution or a general meeting of all members of MSCHA would be called to decide by a majority vote the next step to be taken by MSCHA concerning the future course of action to be pursued by MSCHA.

It appears that at the meeting, from which the members who had demanded back their contributions were excluded, the management of MSCHA changed the by-laws of MSCHA, and those in attendance, that is, the group loyal to the management, decided that they would attempt to purchase some similar apartment complex for the purpose of making available to the members suitable living facilities at reasonable prices.

As noted, several of the members demanded the return of their funds since they did not desire to participate in any further attempts by the management to acquire any property other than Mandalay Shores. Some of the members received refunds. However, the management decided not to honor any further requests for refunds and declared that members who demanded refunds were no longer members in good standing and lost their right to participate in the affairs of MSCHA. At this time, several of the dissident members instituted an action in the Circuit Court for Pinellas County and sought to recover not only

their contributions, but also sought punitive damages based on alleged fraud by the management. The Plaintiffs in the state court action also applied for and obtained the appointment of a receiver. However, the imposition of receivership turned out to be meaningless inasmuch as the only assets of MSCHA, the funds collected from the members, were on deposit in the Northern District of Illinois and the receiver never acquired control of the funds.

When all efforts of MSCHA's management to purchase Mandalay Shores failed, and it was faced with the receivership imposed by the state court, MSCHA filed its first voluntary Petition for Relief under Chapter 11 in this Court on April 3, 1981. In spite of repeated attempts by MSCHA to produce a viable plan of reorganization, all its efforts failed and certain disgruntled former members sought repeatedly to have a dismissal of the Chapter 11 case, or in the alternative to convert the Chapter 11 case to a Chapter 7 liquidation case.

In due course, the Motion to Dismiss was heard. The Court considered all the alternatives and concluded that while this case was facially ripe for conversion, it could not be done without MSCHA's consent, because MSCHA was "a non-monied, non-business, non-commercial" corporation and as such its case could not be converted absent consent to a Chapter 7 liquidation case by virtue of § 1112(c) of the Bankruptcy Code. Based on this, this Court entered an Order and granted the Motion to dismiss the Chapter 11 case, but suspended the effectiveness of the Order for 20 days in order to allow parties of interest in the alternative to seek an appointment of the trustee pursuant to § 1104, who might then be able to propose a confirmable plan of reorganization.

Notwithstanding the entry of the Order of Dismissal, it appears that the Chapter 11 case remained alive and this Court entered several additional Orders, all of which dealt primarily with the unsuccessful attempts by MSCHA to acquire suitable housing for the loyal members of MSCHA, provided none of the funds of the estate were used for that purpose. When everything failed,

this Court ultimately dismissed with finality the first Chapter 11 case on October 25, 1985. The Order of Dismissal provided that all administrative expenses incurred during the pendency of the case would be considered by this Court, and no funds would be returned to MSCHA until this Court entered final orders on all applications for allowance filed by the numerous professionals involved in that Chapter 11 case. Although MSCHA filed a Motion for Rehearing on the Order of Dismissal, the Motion was denied on November 13, 1985, and the first Chapter 11 case, No. 81–0547 was dismissed.

While the first Chapter 11 case was still technically pending in this Court, MSCHA filed its second voluntary Petition for Relief under Chapter 11 in the Northern District of Illinois. The counsel for the dissenting members wasted no time and immediately sought a dismissal of this second Chapter 11 case on the basis that it was filed in bad faith because the sole purpose of this second Chapter 11 case was to defeat the lawful claims of members who demanded a refund of their contributions.

In due course, the bankruptcy court in the Northern District of Illinois heard the Motion to Dismiss and concluded that the second Petition was nothing more than abuse of the judicial process and was filed in bad faith. The Court entered an Order which dismissed the Chapter 11 case "with prejudice" on December 19, 1985 (generally unpublished).

MSCHA promptly filed a Notice of Appeal. The district court on appeal concluded that MSCHA was not an economic entity with the ability to obtain a reorganization in any real economic sense. The court held that Judge Eisen's Order dismissing the second Chapter 11 with prejudice was correct, and therefore affirmed the Order of Dismissal with prejudice on July 30, 1986, 63 B.R. 842. While the appeal was still pending in the district court, MSCHA filed its third Petition for Relief under Chapter 11 on March 31, 1986, in this court. In this present Chapter 11 case, the Debtor again unsuccessfully attempted to obtain confirmation of any plan of reorganization. In

the interim, because of misconduct of management based on management's inappropriate business involvements, this Court granted the Motion filed by parties of interest and appointed a Trustee. The Trustee has yet to file a Disclosure Statement or Plan of Reorganization.

Before considering the Motions filed by MSCHA, Cannon and Meyer, it is appropriate to comment on the reasons why did this Court permit MSCHA to remain under the protection of this Court for so long. When MSCHA filed its original Petition for Relief under Chapter 11, this Court had serious misgivings that it was a proper candidate for relief under this Chapter. Notwithstanding, this Court permitted MSCHA to attempt to reorganize for one reason, and one reason only, to assure that the funds collected by MSCHA were used only for the purpose for which he intended that it would be used, i.e., the acquisition of Mandalay Shores by MSCHA. This Court's serious concern about the elderly members and their welfare was the primary reason not to dismiss the initial Chapter 11 case. By denying the Motion to Dismiss the first case, this Court was motivated by its desire to assure that the monies members contributed to MSCHA would not be squandered by management in the event the case was dismissed and not because of this Court's conviction that MSCHA was a proper candidate for reorganization under Chapter 11 of the Bankruptcy Code. It is this Court's concern which prevailed all through these cases.

Considering first the Motion filed by MSCHA, who seeks a voluntary withdrawal or, in the alternative, a dismissal of the Petition, it should be noted at the outset that ordinarily MSCHA would be estopped to urge that its very own Petition for Relief was filed in bad faith, a proposition not wholly without support in these three Chapter 11 cases. MSCHA also urged the dismissal as noted earlier on the basis that 1) Continuing losses or diminution of assets of the estate; 2) a total absence of the likelihood of rehabilitation; 3) that it is unable to effectuate a plan of reorganization; 4) there are prejudicial de-lays; and, 5) because of MSCHA's failure to file a reorganization plan within the time fixed by the Court. Considering these propositions seriatim, it is evident that the estate of MSCHA is not suffering any continuing losses or diminution of assets of the estate since the only asset MSCHA has are funds on deposit in a banking institution, which is currently earning interest.

Next, the proposition that there is a total absence of a likelihood of rehabilitation is also a proposition which is academic inasmuch as this is nothing but a total liquidation case, and the only question which remains is how the funds on deposit should be distributed. The contention that MSCHA is unable to effectuate a plan of reorganization, however, is more than amply supported by this record since all attempts to obtain confirmation of several plans never achieved success during the past more than eight years. The difficulty with this proposition is, however, that the management now has been removed and the affairs of MSCHA have been placed in the hands of the Trustee, who would be the only party of interest at this time who could propose a plan of reorganization.

In light of this conclusion just stated, the last proposition urged by MSCHA is also without merit. This ground for dismissal is based on the proposition that the Chapter 11 should be dismissed because of MSCHA's failure to file a reorganization plan during the time fixed by the Court.

Lastly, MSCHA's condition should be terminated because the delays which are prejudicial to the creditors are clearly MSCHA's own doing. It ill behooves MSCHA to urge a dismissal of its own case on these grounds and, therefore, should not be accepted even though it is clear that the delays occurred in these three cases is a gross understatement.

Considering these contentions in toto, this Court is satisfied that MSCHA's Motion is not supported by this record and cannot be granted on any of the grounds urged by MSCHA with possibly the exception of its initial contention which MSCHA technically is estopped to urge, that the third Chapter 11 case was filed in bad faith,

a proposition to be discussed below at greater length.

■ The renewed Motion to Dismiss filed by Cannon and Meyer urges a dismissal on the basis that the second Chapter 11 case was dismissed in the Northern District of Illinois with prejudice, and for this reason, the third Chapter 11 case filed by MSCHA in this Court is a legal nullity and cannot be maintained.

Before considering the Motion to Dismiss by Cannon and Meyer, the following comments are in order. The effect of dismissal of a case under Title 11 is dealt with by § 349 of the Bankruptcy Code.

A plain reading of § 349 clearly permits the Court to dismiss a case under Title 11 with prejudice. Thus, a dismissal with prejudice may operate as a complete bar to refiling of a new petition by a debtor whose case was dismissed with prejudice. It is true that most cases dismissed with prejudice state a time-frame within which the debtor may not seek relief again, *In re Damien*, 35 B.R. 685 (Bankr.S.D.Fla.1983) (prohibitions to refile earlier than one year after the date of the Order of Dismissal). At times the courts placed a condition for debtor's right to seek relief again by requiring a specific court approval before a subsequent filing would be accepted and proffered. *Sundstrom Mortgage Co., Inc. v. 2218 Bluebird Limited Partnership*, 41 B.R. 540 (S.D.Calif.1984). However, there is nothing in the Bankruptcy Code which prevents a dismissal with prejudice, prohibiting a Debtor to ever seek relief again in any Bankruptcy Court. This is especially true when a previous case was dismissed because a Court of competent jurisdiction concluded that a Debtor was not eligible for relief under the Chapter which the Debtor sought relief. Equally, when the case was dismissed because the Court concluded that the petition was filed in bad faith, thus it was appropriate to dismiss the case pursuant to § 1112(b) for "cause." In these last two instances just described there is hardly any question that, if nothing else, the doctrine of "res judicata" would preclude a Debtor to relitigate the issue of eligibility or the issue of bad faith

in a subsequent petition unless the Debtor is able to show radically changed conditions which were not present when the previous case was dismissed.

The second Chapter 11 case of MSCHA was dismissed in the Northern District of Illinois by Judge Eisen on the basis that it was filed in bad faith. It should be noted that the District Court affirming the Order of Dismissal with prejudice entered by Judge Eisen did not base his affirmance on the fact that it was a repeat filing or because it was filed in bad faith, but concluded that the Debtor, whose only assets were its bank deposits, a Debtor which conducted no ongoing business and had no value as a business, did not qualify for relief under Chapter 11. The District Court also held that a conclusion that the Chapter 11 case should be dismissed because the Debtor did not qualify for Chapter 11 relief was a decision on the merits. This being the case, it is evident that the decision on appeal by the District Court did operate as an absolute bar for MSCHA to ever seek the relief under Chapter 11 in any bankruptcy court.

The Eleventh Circuit had occasion recently to consider the effect of repeat filings in the case of *In re Saylors*, 869 F.2d 1434 (11th Cir.1989). In *Saylors*, the debtor obtained his discharge in a Chapter 7 case, but before the case was actually closed, the Debtor filed a petition for relief under Chapter 13. The Court of Appeals in *Saylors* concluded that a:

> ... *per se* rule barring the filing of a Chapter 13 petition during the period at issue [the time after the entry of the discharge but before the filing of the trustee's final report] would conflict with the purpose of Congress in adopting and designing Chapter 13 plans.

Therefore, the Court in *Saylors* permitted both cases to proceed.

In the *Saylors* case the Eleventh Circuit emphasized the fact that the Debtor's monthly income increased $283.00 between filing of the Chapter 7 case and the filing of the Chapter 13 case which presented a radical change in the financial conditions of the Debtor.

The long and troublesome history of this Debtor bears no resemblance to the facts involved in *Saylors*. There is no doubt that MSCHA's only asset is still monies on deposit in the bank. MSCHA is still not conducting any ongoing business and had no value as a business over and above the value of the deposits. MSCHA still has no complex debt structure in need of restructuring; it has no secured creditors; the only parties of interest, in addition to its members, those who are still loyal to the management and the dissident members, are administrative claimants by all the professionals who represented MSCHA over the years in its futile efforts to purchase Mandalay Shores or other housing facility. The members of MSCHA, many of whom died years ago, are still in the same legal position they were earlier. The only asset of MSCHA is still the funds collected from the members, and the danger of the dissipation of the funds if the case is dismissed is apparently still a reality. In sum, MSCHA is still in exactly the same position as when it filed its first Chapter 11 and, most notably, when it filed its second Chapter 11 in the Northern District of Illinois where the Court concluded that MSCHA is not the type of Debtor who would qualify for Chapter 11 relief.

As noted earlier, this Court went an extra mile only because it was apprehensive that the members of the Association, especially the so-called members who are declared to be no longer members in good standing would not be able to recover their contributions made for the purpose of acquiring Mandalay Shores. Notwithstanding the foregoing, this Court is now constrained to reconsider its previous position and concludes that the journey of MSCHA has reached the end of the road.

This Court is not unaware that the management of MSCHA has been removed from control of the affairs of MSCHA and the Trustee at this time appointed by the Court is technically in charge of the administration of MSCHA's estate. The order appointing the Trustee is on appeal. The Trustee has yet to file a Disclosure Statement and Plan of Reorganization. It is very likely that the Trustee would be just as incapable of presenting an acceptable plan which could achieve approval by creditors and reach confirmation by this Court, precisely which was the fate of all of the plans previously filed by MSCHA over the years. In the last analysis, based on the foregoing, it appears that the best course of action at this time is to terminate this third Chapter 11 case and grant the Motion to Dismiss.

One additional comment is warranted. At the time the first Chapter 11 case was filed, there was a suit filed in the Circuit Court in and for Pinellas County on behalf of several members of MSCHA who demanded return of their contribution when it became apparent that MSCHA could not purchase Mandalay Shores from HUD. The Circuit Court action appointed a receiver who technically may still be the receiver. Even if the state court action is no longer open and pending, the parties of interest should be given an opportunity to apply promptly to the Circuit Court either for the resuscitation of the receivership or for the appointment of a new receiver in order to assure that the funds on deposit, the only asset of MSCHA, will be safeguarded and will not be dissipated by the management of MSCHA.

This leaves for consideration the question of whether or not this Court should retain jurisdiction to deal with the numerous pending applications for allowance by professionals and appropriate treatment of administrative claims. This Court is satisfied that it is appropriate that as a condition to the dismissal, this Court shall retain jurisdiction to consider and deal with all unresolved administrative claims and, when allowed, order the Debtor to pay them in full as a condition precedent to the finality of the order of dismissal.

Based on the foregoing, it is

ORDERED, ADJUDGED AND DECREED that the Motion (or Petition) for Voluntary Withdrawal or Dismissal of Petition for Relief Voluntarily Filed under Chapter 11 of the Bankruptcy Code for the Purpose of Terminating Case filed by Mandalay Shores Cooperative Housing Associa-

tion, Inc., filed by Elizabeth M. Cannon and Ralph Meyer be, and the same is hereby, granted and that this Chapter 11 case is dismissed with prejudice for the reasons stated in this opinion. It is further

ORDERED, ADJUDGED AND DE-CREED that this Court specifically reserves jurisdiction for the limited purpose to consider the disposition of all administrative claims, including applications for allowance by professionals, all of which must be filed not later than thirty (30) days from the date of the entry of this Order. It is further

ORDERED, ADJUDGED AND DE-CREED that in the interim, the parties may proceed and request the relief deemed to be appropriate either in the pending suit in the Circuit Court in Pinellas County, or in any other appropriate forum.

DONE AND ORDERED.