## In re Leon P. MANDERSON, Debtor.

### Bankruptcy No. BK 90–70195.

United States Bankruptcy Court,
N.D. Alabama, W.D.

Nov. 28, 1990.

**618**

Edwina K. Miller, Tuscaloosa, Ala., for debtor.

Michael Stilson, Chapter 13 Trustee.

George M. Ritchey, Birmingham, Ala., for creditor.

## MEMORANDUM OF DECISION

GEORGE S. WRIGHT, Chief Judge.

This matter came before the Court on Debtor's Motion to Reduce Claim and to Lower Payments, which sought to disallow the claim of Creditor Leader Federal Savings and Loan Association because of a discharge of the obligation in a previous Chapter 7 case.

Debtor contended that the January 23, 1990 discharge relieved the Debtor of personal liability on debt secured by a mobile home which was destroyed by fire June 20, 1990.

In response, the Creditor apparently contended, in effect, that Manderson abused the bankruptcy system by three bankruptcy filings within three years. Creditor asked that its deficiency claim be reduced to the amount of its attorneys fees, $1,469.00, but that such still be paid through the Trustee as part of Manderson's Chapter 13 plan.

While Creditor's unhappiness is understandable, a review of the applicable law in the Eleventh Circuit on this type of situation shows clearly that Debtor's motion is due to be GRANTED.

## FINDINGS OF FACT

On April 17, 1987; Debtor Leon P. Manderson filed his first petition under Chapter 13 of 11 U.S.C. The Court dismissed that first Chapter 13 plan in July of 1989. In October of 1989, Leader Federal filed a detinue action against Manderson in Tuscaloosa County Circuit Court, seeking repossession of the mobile home.

Thereafter, on October 12, 1989, Manderson filed a petition under Chapter 7 of 11 U.S.C. On November 9, 1990, Leader Federal filed a Motion for Relief from Stay so it might enforce its security interest against the mobile home. On December 6, 1989, this Court granted that Motion for Relief from Stay.

However, the Debtor refused to surrender possession of the mobile home. So Leader Federal once again initiated a civil action in Tuscaloosa County Circuit Court. Manderson's Chapter 7 case continued through the process of the Bankruptcy Court and on January 23, 1990, the Court discharged the Debtor, meaning that Manderson was discharged of personal liability on all the debts against him at the time of the filing of the Chapter 7 petition.

Leader Federal, meanwhile, had filed a motion for a default judgment in the state court action which Debtor's counsel had answered. While Creditor's Counsel was preparing a motion for summary judgment, Manderson filed his new Chapter 13 petition January 25, 1990. The state court enforcement action was thus halted by the 11 U.S.C. § 362 automatic stay.

The Creditor objected to confirmation of the Debtor's Chapter 13 plan. The Court overruled the objection and confirmed that plan on March 3, 1990. Leader Federal was treated as a secured creditor under the plan with a $115.00–per–month payment on an arrearage of $4,116.10 through February of 1990; and a $212.80–per–month regular payment on a balance due of $17,826.44. (At that point, Leader Federal valued the mobile home at $17,500.00)

Then fire destroyed the mobile home on June 20, 1990. On August 6, 1990, Debtor filed this Motion to Reduce Claim and to Lower Payments. Debtor's motion seeks to have all claims of Creditor disallowed and Debtor's payments by payroll deduction to the Chapter 13 Trustee reduced accordingly.

In a Response to Motion to Reduce Claim and to Lower Payment filed August 21, 1990, Leader Federal contended that the insurance on the mobile home left a deficiency of $4,269.33 above the "market value of the mobile home." Of that total, Leader Federal contended that $1,469.00 was attorneys fees incurred because of Debtor's conduct *after* the filing of the Chapter 7 petition and *before* the filing of the Chapter 13 petition.

A hearing on the issue was held August 21, 1990 and Leader Federal was given ten days to file a brief. That brief was filed on August 29, 1990. In it, Creditor contended: 1) that Debtor abused the bankruptcy system by his Chapter 7, and subsequent Chapter 13, filings; 2) that Debtor had wrongfully detained the mobile home, citing *Ala.Code* § 6–6–256 (1975) and 11 U.S.C. § 521; 3) that Creditor was damaged through the wrongful detention and "neglect, abuse and non-use" of the collateral; 4) that Creditor is at least entitled to the attorneys fees in the deficiency as damages. The Court then took the matter under submission.

## CONCLUSIONS OF LAW

A. IN RE SAYLORS WOULD ALLOW SUCH CONSECUTIVE FILINGS IN THE ELEVENTH CIRCUIT.

■ *In re Saylors*, 869 F.2d 1434 (11th Cir.1989) is controlling authority for this area of the law in the Eleventh Circuit. *Saylors* would not define Manderson's use of Chapters 7 and 13 as abuse of the bankruptcy system.

In that case, which originated in this Court, Debtors had also filed a Chapter 13 petition to cure arrearage on a home mortgage debt after they had been discharged of personal liability on the underlying debt. The Court of Appeals affirmed this Bankruptcy Court, reversing the United States District Court.

The Eleventh Circuit held in that important case that a Chapter 13 debtor may indeed cure arrearage on a home mortgage—even though he no longer had personal liability due to discharge in a prior Chapter 7 proceeding. Additionally, the Court held that the Debtor was not barred from filing a Chapter 13 petition in the period between his Chapter 7 discharge and the filing of the final report by the Chapter 7 trustee. (This is also the timing found in the Manderson case.)

In *Saylors*, the debtor had filed his Chapter 13 petition the day after the bankruptcy court lifted the automatic stay for the mortgagee. The Eleventh Circuit nevertheless found that this did not constitute evidence of bad faith.

The appeals court based part of its decision in a ruling by the Supreme Court of the United States, *Perry v. Commerce Loan Co.*, 383 U.S. 392, 86 S.Ct. 852, 15 L.Ed.2d 827 (1966). The *Saylors* court said at 1437–38:

A *per se* rule barring the filing of a chapter 13 petition during the period at issue also would conflict with the purpose of Congress in adopting and designing chapter 13 plans. In *Perry v. Commerce Loan Co.*, 383 U.S. 392, 86 S.Ct. 852, 15 L.Ed.2d 827 (1966), the Supreme Court held that the statutory provision barring a debtor from receiving a chapter 7 discharge within the first six years following the receipt of another discharge in bankruptcy does not apply to a chapter 13 petition filed after the receipt of a bankruptcy discharge. The Court reasoned that the application of the six-year bar to chapter 13 plans would pre-

620

vent deserving debtors from utilizing the plans and thereby *collide with the purpose of Congress* in adopting and designing these plans. *Id.* at 399 and n. 6, 86 S.Ct. at 857 and n. 6. We similarly are convinced that barring a debtor as a matter of law, from filing a chapter 13 petition during the period at issue would collide with the purpose of Congress in adopting and designing chapter 13 plans.

Consequently, Manderson was within his legal rights to seek the protection of a Chapter 13 reorganization to cure the arrearage on his mobile home, even though the Chapter 13 petition was filed two days after his Chapter 7 discharge. With that discharge, Leader Federal lost its legal right to proceed against this Debtor for a deficiency. The Creditor was left with its security interest in the collateral, however, and the right to proceed against the collateral in the event of post-discharge default.

## B. THE CODE SECTIONS CITED BY THE CREDITOR DO NOT LEAD TO A CONCLUSION OF WRONGFUL DETENTION OF THE MOBILE HOME BY MANDERSON.

Leader Federal, in its brief, apparently alleges that what it defines as a failure by Manderson to comply with *Ala.Code § 6–6–256* and with 11 U.S.C. § 521 in the bankruptcy code constitute wrongful detention of the mobile home.

### 1. *Ala.Code* § 6–6–256 has no relevance to the issue of whether Leader Federal's claim for its deficiency should be disallowed and the Debtor's payments reduced by the Bankruptcy Court.

In the event that wrongful detention is proven in a state detinue action, *Ala.Code*

§ 6–6–256 gives guidance on the way to assess damages for that wrongful detention. It reads:

> Upon the trial, the jury must, if it finds for the plaintiff, assess the value of each article separately, if practicable, and also assess damages for its detention. If it finds for the defendant, it must, in like manner, assess the value and, if in the possession of the plaintiff, assess damages for its detention. Judgment against either party must be for the property sued for, or its alternate value, with damages for its detention to the time of trial.

Leader Federal's detinue action was pending in Tuscaloosa County Circuit Court at the time Manderson's Chapter 13 petition stayed action against the mobile home. Subsequently, the Creditor was included in the plan and paid as a secured creditor for both arrearage and regular monthly payments. There, as yet, has been no indication of a finding of wrongful detention against Manderson. This particular statute is not a substantive base for defining wrongful detention, but a definition of a remedy after such a finding. Its invocation by the Creditor is premature.

### 2. There is no remedy provided for a creditor for a debtor's noncompliance with 11 U.S.C. § 521.

There has been considerable discussion in the bankruptcy courts since the enactment of Section 521(2) as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984.[1] Section 521(2)(A), which states the options open to the debtor: retaining or surrendering collateral, re-

---

**1.** 11 U.S.C. § 521(2) provides:
**Debtor's duties.**
The debtor shall—
(2) if an individual debtor's schedule of assets and liabilities includes consumer debts which are secured by property of the estate—
(A) within thirty days after the date of the filing of a petition under Chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, the debtor shall file with the clerk a statement of his intention with respect to the reten-

tion or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;
(B) within forty-five days after the filing of a notice of intent under this section, or within such additional time as the court, for cause, within such forty-five day period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; and

deeming or reaffirming the agreement, had its genesis in a proposal from the consumer credit industry. *See In re Belanger*, 118 B.R. 368 (Bkrtcy.E.D.N.C.1990). However, the statute Congress finally adopted was much milder than that proposed by the creditors. *In re Eagle*, 51 B.R. 959 (Bkrtcy.N.D.Ohio 1985) said at 962:

> The earlier proposed amendment to section 521 indicates a legislative intent to punish the debtor for failure to timely state and perform his intention to redeem or reaffirm. *Congress retrenched from that position after debate and compromise* and fashioned a procedure which encourages out-of-court compromise between debtor and creditor in restructuring the debt. The new section is not intended to abrogate those substantive rights of exemption and redemption retained by the debtor. The notice and time limitation components of section 521(2) are intended to facilitate speedy resolution of debt compromise and repayment. (emphasis added).

In *Lowry Federal Credit Union v. West*, 882 F.2d 1543 (10th Cir.1989) the court held that a debtor's failure to file the notice of choice of redemption or reaffirmation did not give the creditor an automatic right of repossession. It held additionally that the bankruptcy court was within its discretion in permitting debtors to keep the collateral.

"While a debtor may redeem property, subject to 11 U.S.C. § 722, or reaffirm a debt, subject to 11 U.S.C. § 524(c)(4), nothing within the Code makes either course exclusive," *Lowry* said at 1546. This court also said that under Section 704(3), the Chapter 7 trustee is the proper party to act against a debtor for failure to comply with Section 521(2)—but that the Code provides no penalty for failure to comply, nor "a specific remedy for a creditor" for debtor's non-compliance. *Lowry* at 1546. "The creditor's right to demand redemption or reaffirmation is neither enhanced nor diminished because of that failure (to comply)," the decision continued at 1546.

While there is some minority authority to the contrary, this is the better view of the application of Section 521(2). Consequently, it cannot be used as a base for a substantive finding of wrongful detention to support damages for this Creditor.

## C. MANDERSON WAS EXERCISING DEBTOR'S RIGHTS UNDER ALA. CODE § 7–9–503 (1975) WHEN HE REFUSED TO SURRENDER THE MOBILE HOME IN DECEMBER OF 1989.

■ It is apparently uncontested that Leader Federal held a properly perfected security interest in Manderson's mobile home as provided in Title 7, Article 9 of the Alabama Code, the Uniform Commercial Code title. Under *Ala.Code* § 7–9–503 (1975), such a secured party may practice "self-help" repossession "if this can be done without breach of the peace" or may proceed by court action.[2]

In this case, Manderson refused to give up possession voluntarily in advance of court action. Consequently, Leader Federal was required to proceed by court action—since wresting possession away from Manderson would necessarily involve a forbidden breach of the peace. But before the Creditor was able to get a judgment in its state court action, the filing of Manderson's Chapter 13 petition January 25, 1990, activated the automatic stay of 11 U.S.C. § 362. Such is a risk of doing business for those in the consumer credit industry, a

---

(C) nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title.

**2.** *Ala.Code* § 7–9–503 (1975) provides:
Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. If the security agreement so provides the secured party may require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party which is reasonably convenient to both parties. Without removal a secured party may render equipment unusable and may dispose of collateral on the debtor's premises under section 7–9–504. (Acts 1965, No. 549, p. 811.)

risk they may underwrite in the interest rates charged.

Both the Debtor, Manderson, and the Creditor, Leader Federal, were within their legal rights under U.C.C.'s Section 9–503. Manderson cannot be found guilty of wrongful detention of the mobile home when plainly state law contemplates that the person in possession may decline to surrender the collateral until an adjudication in state court. This Court's granting of Leader Federal's Motion for Relief from Stay on December 6, 1989, merely authorized the Creditor to use those remedies available to it under Section 9–503 for gaining possession. Relief from the Chapter 7 stay did not expand the Creditor's remedy nor contract the Debtor's rights under *Ala. Code* § 7–9–503.

### D. THE CREDITOR IS NOT DUE ITS ATTORNEYS' FEES SINCE THEY COULD ONLY BE PAID BASED ON THE DISCHARGED CONTRACT.

■ The so-called "American Rule" generally, and under Alabama law in particular, prohibits the award of attorneys' fees in the absence of a specific statutory or contractual provision. *See Barton v. Drummond Co.,* 636 F.2d 978 (5th Cir. (Feb. 9,) 1981) and *Burgess v. Williamson,* 506 F.2d 870 (5th Cir.1975) (all former Fifth Circuit decisions prior to close of business September 30, 1981 adopted as binding law in the new Eleventh Circuit with *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir. 1981)).

■ Since the facts in this case do not fit any exception to the American Rule, this Creditor may not be awarded the $1,469.00 in attorneys' fees it seeks. The contract between the Debtor and the Creditor was the only bridge to support an award of attorneys' fees to the Creditor. The Creditor's rights against Manderson under the contract, including the right to attorneys' fees, were discharged with his Chapter 7 discharge January 23, 1990.

## CONCLUSION

The Debtor in this case has done nothing more than exercise the rights granted to him by the Congress of the United States in the Bankruptcy Code and the Alabama Legislature via the state version of U.C. C.'s Article 9 on secured transactions. Therefore, the Creditor is not due any damages through which Creditor might recoup some of the its deficiency on the burned mobile home.

The Creditor's claim is due to be disallowed and the Debtor's payments reduced by the amount of the payments to Leader Federal Savings and Loan Association.

This memorandum shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. A separate order will be entered consistent with this opinion.